# Shorter *v.* The State.

### *Indictment for Carrying Concealed Weapons.*

1. *Declarations not to be garbled.*—To make out a threatened or apprehended attack, as a defense to a prosecution for carrying concealed weapons (Code, § 4109), the defendant offered in evidence a letter written by the prosecutor to the chief of police, in which the writer stated "that he did not wish to violate the law, nor to be arrested for violating the law, but that he understood the defendant had made threats against him, and was therefore carrying a pistol concealed about his person." *Held*, that the contents of the letter could not be garbled by the defendant, but must be taken altogether as written; and that the court properly refused a charge, requested by him, to the effect "that what was said in the letter about any threats made by him could not be considered by the jury as evidence."

2. *Threatened or apprehended attack; relevancy of evidence as to.*—To make out the defense of a threatened or apprehended attack, within the statutory exception, the motive (or purpose) of carrying the weapon must be defense against violence, threatened or apprehended. If offense instead of defense—a meditated attack on another, and not an apprehended attack by him—be the real motive, the party is guilty of violating the statute; and as bearing on this question, the conduct and declarations of the accused and the prosecutor, during an altercation and subsequent rencontre between them, out of which the prosecution arose, are relevant and competent evidence.

3. *General objection to evidence.*—A general objection and motion to exclude a mass of evidence, some of which is legal and admissible, may be overruled entirely.

[Shorter v. The State.]

4. *Threatened or apprehended attack.*—To establish the defense of a threatened attack, the threat must be real, and not simply apparent, or simulated ; but, to make out an apprehended attack, it is sefficient to show facts which may convince the jury that he had good reason to apprehend an attack—as reports of threats, believed to be true, though not true in fact ; hostile demonstrations ; preparations for attack, real or apparent, and the entire conduct of the parties.

5. *Charge as to amount of fine to be assessed by jury.*—In a prosecution for carrying concealed weapons, the court may properly instruct the jury, that, if they find the defendant guilty, they should assess such fine, within the limits fixed by law, as they may deem necessary to suppress the evil practice of carrying concealed weapons.

FROM the City Court of Montgomery.
Tried before the Hon. JOHN A. MINNIS.

J. GINDRAT WINTER, for defendant.

H. C. TOMPKINS, Attorney-General, for the State.

STONE, J.—The defendant was indicted under section 4109, Code of 1876, for carrying concealed about his person a pistol. The defense was, that he was threatened with, or had good reason to apprehend an attack. If the jury believed the testimony of the three witnesses examined for the State, a *prima facie* case against the accused was shown. Defendant then proved that, in a letter written by one Sharp, to the chief of police, as we infer, and only a few days before the occurrence out of which this indictment grew, Sharp stated, that "he did not wish to violate the law, or to be arrested for violating the law, but that he understood that defendant had made threats against him (Sharp), and that he was consequently carrying concealed about his person a pistol." The witness, chief of police, testified that, immediately after he received said letter, he showed it to the accused, who read it, and remarked, "that he would pull Sharp's beard, or that he ought to pull his beard." Another witness, to whom the letter was shown (the letter had been destroyed, and was not produced), described its contents substantially as the first witness had done, and added, that he had heard defendant was carrying a pistol for Sharp. The difficulty, hereafter referred to, between the defendant and Sharp, appears to have had some connection with a State prosecution before a justice of the peace, of a person called "Happy John," prosecuted by Sharp, and defended by the defendant in this cause, as counsel. On a previous day, when said cause was called for trial, Sharp moved for a continuance, when defendant remarked, Sharp "would swear to anything." Sharp made no reply. It was also shown that, on the day preceding the rencontre, after mentioned, Sharp and the defendant

[Shorter v. The State.]

were, at the same time, in the law-office of another attorney, and "that they were apparently friendly."

The bill of exceptions recites that it contains all the evidence; and the foregoing is all the testimony bearing on the question of excuse for carrying the pistol concealed about the person. There is not a word in it, or inference to be drawn from it, tending, in the remotest degree, to show that the defendant had been threatened with, or had any reason to apprehend an attack. On the contrary, the letter of Sharp, the contents of which were known to the defendant, repelled all idea that he, Sharp, meditated an attack. That letter contained the only evidence offered that Sharp was carrying a pistol, and also stated the reason he gave for carrying it. The contents of the letter were put in evidence by the defendant, for the purpose, we must suppose, of making good his excuse for carrying a pistol. Putting Sharp's admission in evidence, he was bound to take it as it was made, and could not be allowed to reject a part of the statement, which he thought would operate against him. If any part went to the jury, all he said on the same subject, in the same conversation or letter, must be laid before them, to be weighed by them. The jury were not bound to believe all, but it could not be garbled in laying it before them. They "must be taken altogether—that which makes for the party, as well as that which makes against him. The jury are not bound to give equal credence to every part."—1 Brick. Dig. 835, § 437. If the defendant desired to have the jury instructed in the rules for weighing such admissions, this was a subject for a charge, not a ground for excluding any part of the evidence. Taken altogether, the letter, if considered as evidence of Sharp's feelings and purposes, tended to show he was carrying the pistol for defense against an attack he apprehended from the defendant, and with no view of himself becoming an aggressor. The City Court did not err in refusing to instruct the jury, "that what Sharp had said in the letter, about any threats made by defendant, could not be considered by them as evidence."

Although, as we have said, we fail to find in the record any evidence that defendant had been threatened with, or had good reason to apprehend an attack, still some testimony had been laid before the jury, which was obviously relied on as tending to show such excuse for carrying the pistol; and, as it can not be known what influence slight circumstances in evidence may exert on juries, the court did not err in receiving rebutting evidence. The conduct of the parties, on each of the occasions when they were before the justice of the peace, and especially the circumstances immediately

preceding and attending the rencontre on the last of those occasions, were certainly admissible evidence on the inquiry, whether the defendant apprehended an attack from Sharp, or meditated an attack upon Sharp. If the latter, then it furnished no excuse to him for carrying the pistol. So, that the parties were together, and "apparently friendly," on the day preceding the difficulty, and subsequent to the date of Sharp's letter to the chief of police, was a circumstance tending to repel the idea that Sharp contemplated an attack on defendant.—See *Baker v. The State,* 49 Ala. 350; *Eslava v. The State, Ib.* 355. We reaffirm the doctrine declared in *Stroud's case,* 55 Ala. 77, that "the motive, the purpose of carrying the weapon, must have been defense against violence, which has been threatened, or which is reasonably apprehended. If this is not the motive—if offense, not defense, is the real purpose, though facts may exist which would [otherwise?] justify the carrying the weapon concealed, the statute is violated."

If the witnesses in rebuttal are thought to have gone too far in giving the particulars of the altercation and combat, then the objection should have been confined to that part of the evidence, which it is alleged was in excess of what the rule allows. Manifestly the court below did not err in receiving evidence of the words and conduct of each party immediately preceding the assault, of the person by whom the first assault was made, and in what manner provoked and resented. All this tended to determine the question, whether the defendant apprehended an attack on him, or meditated an assault on Sharp. The objection and motion to exclude were directed against all testimony of this combat, and did not separate the legal from the illegal, if any part was illegal. The court was not bound to separate the legal from the illegal portions of the evidence, but need only respond to the motion as made. The court did not err in overruling this objection.

That the pistol was carried by the defendant concealed about his person, appears to be one of the uncontroverted facts in this case. The defense, or exculpation, assumes two phases : *first,* that the accused was threatened with an attack; and, *second,* that he had good reason to apprehend an attack. Either of these, if proved to the satisfaction of the jury, is sufficient, without invoking the other. The first is a fact, and, like any other fact, is susceptible of direct, positive proof. The threat, to amount to a defense, must be real, not simulated, or simply apparent. In the absence of an actual, real threat, it can not be affirmed that the accused has been threatened with an attack. The other phase of the defense

rests on different principles. Report of threats, believed to be true, though in fact untrue; hostile demonstrations; preparation for attack, real or apparent, and the entire conduct of the parties, may be considered by the jury, in a conscientious inquiry, whether the defendant had just grounds to apprehend an attack. If, in this honest search after truth, the jury are convinced the defendant had good reason to apprehend an attack, and that he carried the pistol for · defense against such apprehended attack, and not for use in an encounter he himself intended to bring on, or provoke, then the defense is made good, and should be allowed.—*Baker v. The State*, 49 Ala. 350.

We have had occasion heretofore to remark, that carrying concealed weapons is one of the most pernicious practices that modern civilization has developed.—See *McManus v. The State*, 36 Ala. 285; *Mitchell v. The State*, 60 Ala. 26. It is the *causa causans* of perhaps three-fourths of the homicides which stain our criminal jurisprudence. Could legislatures and courts discover some method by which this causeless, evil practice can be reformed, the result would be a vast saving of valuable lives to the commonwealth. A more vigorous prosecution, and severer punishment of violators of this wholesome statute, would mark an era of reform, and of a more peaceful state of society. If offenders in high social position were made an example of—were made to know and to suffer the sterner penalties the law has provided—this dangerous practice would become much less prevalent, and homicides much less frequent. Punishment is not inflicted, as an atonement exacted for the wrong done. It has a twofold object: reformation of the offender, or the disabling of the perpetrator, temporarily or permanently, to commit like offenses. This is the law's operation upon the offender himself. But the penalties and sanctions of the law have a wider aim. They look to the welfare of the general public, and seek to deter others, by the dread of the example made of one offender, from offending in the like way.—4 Black. Com. 11. Public terror and public restraint are among the higher aims of human punishment; and it is not error to instruct the jury, in such a case as this, if they find the defendant guilty, then they should assess such fine, within the limits prescribed by law, as, in their sound judgment and discretion, is necessary to suppress the evil.—*Weed v. The State*, 55 Ala. 13.

We find no error in the record, and the judgment of the City Court is affirmed.