# Reynolds *v.* The. State.

## *Indictment for Murder.*

1. *Dying declarations; when admissible.*—Dying declarations are admissible only in cases of homicide, when the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of such declarations; in other words, " to identify the prisoner and the deceased, to establish the circumstances of the *res gestæ*, and to show the transactions from which the death results."

·2. *Same; when not admissible.*—But the dying declarations of the deceased, as to the state of feeling existing between him and the defendant—as where he said, "he had nothing against the defendant, and did not know that defendant had anything against him"—are not competent evidence for the prosecution.

·3. *Same; admissible though death does not ensue immediately.*—If the declarations are uttered under a sense of impending dissolution, they are not rendered inadmissible, by the fact that death does not ensue until after the lapse of a considerable time.

4. *Same; not excluded because other evidence exists to the same effect.* It is sometimes said that such declarations are tolerated on the principle of necessity; but there is no rule of law which excludes them, because there is other, and even undisputed testimony as to the cause of the death, and the circumstances attending it ; and such a rule would be impracticable, as well as antagonistic to the reasons which sanction the admission of such evidence.

5. *Same; general objection to, when part admissible, may be overruled.* A general objection to the admission of dying declarations, when offered ·as a whole, may be overruled, although a portion of the evidence is illegal.

6. *Re-examination of witness; action of court in permitting not revisable.*—As to new matter, a party cannot, ordinarily, re-examine a witness in rebuttal; but, if it is permitted by the court below, such action is not revisable in this court.

7. *Exceptions; when to be taken.*—Exceptions must be taken during the progress of the trial, and before the jury leave the bar of the court.

8. *Conflicting recitals of judgment entry and bill of exceptions.*—When the judgment entry recites an organization of the jury, the arraignment of the prisoner, and all the incidents of the trial, in regular and proper form, these recitals must prevail over contradictory statements· in the bill of exceptions to which no exception was reserved.

9. *Sentence; how irregularity in pronouncing may be cured.*—When judgment is irregularly pronounced against the prisoner, without first asking him if he has anything to say why the sentence of the law should not be pronounced upon him, the irregularity may be cured by again calling him to the bar, and pronouncing judgment with the requisite formalities. ·

FROM the Circuit Court of Limestone.

Tried before the Hon. H. C. SPEAKE.

The prisoner in this case, Daniel Reynolds, was indicted

[Reynolds v. The State.]

for the murder of Charles Robinson, " by shooting him with a pistol ;" was duly arraigned at the May term, 1881, of said Circuit Court, and tried on issue joined on the plea of not guilty ; was convicted of manslaughter, and sentenced to imprisonment in the penitentiary for the term of five years. During the trial, the defendant reserved several exceptions to the rulings of the court ; but, by written agreement entered of record, to the effect that the bill of exceptions might be signed within twenty days after the adjournment of the court, it was signed on the 13th June, 1881. The homicide occurred on the 6tu March, 1878, on the plantation of Judge McClellan in, said county, where the deceased and the defendant, with their families, both being freed-men, were then living. As to the circumstances attending the killing, the testimony for the prosecution and for the defense was very conflicting ; but a statement of it is not necessary to an understanding of the points decided by this court. The difficulty occurred between three and four o'clock in the afternoon, and the deceased died about eight o'clock at night of the same day. A witness for the prosecution was asked these questions : "Was any thing said to the deceased, in regard to his impending dissolution, or that his wound was mortal ? if so, what was it ?" "Did he know that his wound was mortal, and that he was going to die ?" The witness answered : "The doctor told him that his wound was very bad ; and deceased said, ' *I know that—I knew that he had killed me.*'" To each of these questions, and to the answers thereto, the defendant objected, "because incompetent, irrelevant, impertinent, and inadmissible ; and because dying declarations can only be admitted to prove the killing and the circumstances attending it, when there are no other witnesses to the fact, and can not be admitted when the circumstances of the killing can and have been proved by other and competent witnesses ;" and he reserved exceptions to the overruling of his objections, and to the admission of the evidence. The witness was then asked, " What was said by the deceased, if anything, with reference to the killing, after he said that he knew the defendant had killed him ?" The defendant objected to this question, " on the same grounds as to the previous questions, and because the prosecution had not laid a proper predicate to authorize the introduction of dying declarations ;" which objection the court overruled, and the defendant excepted. The witness answered : "The deceased said, that he only turned to see if his father was killed, and as he turned was shot by the defendant ; that he had no knife, or weapon of any kind ; that he was not attacking the defendant, or trying to injure him in any way ;

[Reynolds v. The State.]

that he had nothing against the defendant, and did not know that defendant had anything against him." The defendant objected to this answer, "on the same grounds as to the question, and that this formed no part of the *res gestæ.*" The court overruled the objections, and the defendant excepted. The bill of exceptions then states, "The defendant further *excepts* to the questions and answers, on these grounds : that the statements proved form no part of the *res gestæ ;* and that it does not appear from the statements what time elapsed between the time of his stating that he knew the defendant had killed him, and the time of his making declarations of the facts of the killing ; and that it does not appear that he believed himself in a dying condition when he made the declarations as to the facts of the killing."

It appeared that the deceased and his father, with several other persons, some of whom were examined as witnesses, were at work in some "new ground," a quarter of a mile or more from the houses, when the wife of the deceased came from the house, and told him that the defendant had run off his dog ; and thereupon the deceased and his father returned to the houses, and the quarrel and difficulty with the defendant began. As to whether the houses were visible from the "new ground," the testimony of the witnesses was conflicting. An exception to the testimony of John B. McClellan is thus stated : "*Rebutting.* John B. McClellan, witness for the State, sworn, says : 'I am acquainted with the defendant, and was acquainted with the deceased. I know the new ground where the Robinsons were at work on the day of the killing. In the winter and early spring, the house can be seen from seven-eighths of the new ground ; but later in the season, after the leaves come out, it could not be seen, because there was a grove between them.' Defendant excepted to this evidence, on the ground that it was cumulative, and not rebutting testimony ; court overruled objection, and defendant excepted."

After reciting that all the evidence adduced is set out, and that no exception was reserved to the charge of the court, the bill of exceptions thus proceeds : "The defendant submits the following exceptions to the record in this cause : The cause was called for trial on Wednesday, May 25th, 1881 ; and when the solicitor for the State announced ready for trial, the defendant announced that he was not ready, on account of the absence of witnesses, and asked for an attachment *instanter* to bring them into court, which was granted. Afterwards, on the same day, he was again called on to know if he was ready for trial, and announced that he was not ready, because his witnesses had not been brought in, but

[Reynolds v. The State.]

thought he would be ready on the next morning. Thereupon, the court asked the defendant's attorneys, if they would then announce ready, and proceed in the morning; but they declined to do so, on the ground that they did not know whether their witnesses would be there, and could not know until the officer returned. The court then suggested that the jury be impanelled that evening, the defendant reserving the right to announce ready or not on the next morning, and stated that the defendant should not be prejudiced in any of his rights by the impanelling of the jury that evening. The defendant consented to this, and the court thereupon proceeded to impanel the jury. Each juror, as he was selected, was sworn to try the issues joined, before taking his seat in the jury-box; and the jury being impanelled and sworn, the court adjourned until the next morning. When the court convened the next morning, the defendant was brought to the bar, the solicitor again announced ready for trial, and the defendant also announced ready; and the indictment being read, and the defendant called upon to plead, he entered the plea of not guilty. The defendant submits that the record is incorrect, and does not speak the truth, in that it shows that the prisoner was arraigned and pleaded before the jury was sworn, when the facts are in accordance with the above statement; and the defendant excepts, upon the ground that the court erred in electing and swearing the jury before the prisoner was arraigned and pleaded to the indictment.

." The defendant submits, also, the following exceptions to the record, in that it fails to speak the truth in this: that after the jury had returned their verdict, the court called the prisoner to the bar, and, without asking him if he had anything to say why the sentence of the law should not be pronounced on him, proceeded to pass sentence upon him; and the prisoner was thereupon remanded to jail. Subsequently, on the same day, the court ordered the prisoner to be again brought to the bar of the court, which was accordingly done; and thereupon, without setting aside the previous sentence, the court asked him if he had any thing to say why the sentence of the law should not be pronounced against him; to which he replied, that he could not get some of his material witnesses there, either by attachment or otherwise; and the court then proceeded to re-sentence him; to which the defendant objected, and, his objection being overruled, he excepted."

H. C. TOMPKINS, Attorney-General, for the State.

[Reynolds v. The State.]

SOMERVILLE, J.—Dying declarations are admissible only in cases of homicide, where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of such declarations.—1 Greenl. Ev. § 156; 2 Lead. Cr. Cases, (B. & H.) 232. In other words, they are admitted "to identify the prisoner and the deceased, to establish the circumstances of the *res gestæ*, and to show the transactions from which the death results."—Whart. Cr. Ev. § 278; 1 Brick. Dig. p. 511, § 891; Clark's Cr. Dig. § 355.

When, however, they relate to former and distinct transactions, and embrace facts or circumstances not immediately illustrating or connected with the declarant's death, they are inadmissible.—*Ib.* The dying declarations of a deceased person, therefore, showing the state of feeling existing between himself and a defendant charged with his homicide, are not competent evidence for the prosecution.—*Ben v. The State*, 37 Ala. 103.

They must, of course, be uttered under a sense of impending dissolution, and it does not matter that death failed to ensue until a considerable time after such declarations were made.—Whart. Cr. Ev. §§ 282, 286. "It is the impression of almost immediate dissolution, and not the rapid succession of death in point of fact, that renders the testimony admissible."—1 Gr. Ev. § 158. If it appear from the statement of the deceased, made after he was fatally wounded, that he knew or thought that he was *in extremis*, this would clearly be sufficient to authorize the introduction of his declarations made at such time.—*Johnson v. State*, 47 Ala. 9.

And, although it is often said that such evidence is tolerated on the principle of necessity, we know of no rule which would exclude it, where there is other, and even undisputed testimony of witnesses detailing the cause of death and the circumstances producing and attending it. A rule of this character would be impracticable in its application, and antagonistic to the weighty reasons which sanction the admission of this species of evidence.—1 Greenl. Ev. § 156; Whart. Cr. Ev. § 276.

The dying declarations of the deceased, in this case, were clearly admissible in the light of the above principles. He knew that he was *in extremis*, and his utterances related to the circumstances immediately attending the killing, except the declaration that "he had nothing against the defendant, and did not know that defendant had anything against him." This part of the evidence should have been excluded, if properly pointed out and objected to as illegal. But the objection was to the declarations as a whole, and a part of the

[Reynolds v. The State.]

evidence being admissible, there was no error in refusing to exclude it.—*Shorter v. State*, 63 Ala. 129; *Brown v. State*, 52 Ala. 349.

The admission by the court of the cumulative testimony elicited on the rebutting examination of McClellan, was not such an error as will authorize the appellate court to reverse the judgment in the cause.  It is true, that, as to new matter, a party cannot ordinarily re-examine a witness in rebuttal; but, if the *nisi prius* court, in its discretion, sees fit to permit it, such ruling is not reviewable on appeal.—1 Whart. Ev. §§ 572, 574; *Borland v. Mayo*, 8 Ala. 104; *Fant v. Cathcart, Ib*. 725.

Exceptions are required to be taken during the progress of the trial, and before the jury leave the bar of the court; otherwise they come too late.  A statement, therefore, in the bill of exceptions, that "the defendant *excepts*" to any ruling or action of the court, may not always be sufficient.—1 Brick. Dig. p. 246, §§ 58–61.

The judgment entry in this case is regular, reciting the proper organization of the jury, the arraignment of the prisoner, the plea of "not guilty," and the other incidents of the trial.  The record is, however, contradicted by the bill of exceptions, which shows that the jury was selected and sworn before the prisoner was arraigned and pleaded to the indictment.  If this were an error, there was no objection interposed at the time to the proceeding, in the form of an exception or otherwise, and hence no question is presented for the consideration of the appellate court.

The prisoner has nothing to complain of in the sentence of the court.  The first sentence, it is true, was erroneous, by reason of a failure on the part of the presiding judge to first ask the prisoner if he had anything to say why the sentence of the law should not be pronounced upon him.  But this irregularity was fully cured by again calling him to the bar, and re-imposing the sentence in accordance with the requirements of law.

We find no error in the record, and the judgment of the Circuit Court is hereby affirmed.