## Supreme Court—General Term—First Department.

### May, 1885.

### PEOPLE v. EVANS.

#### DYING DECLARATIONS.

To render dying declarations admissible in evidence, the declarant must, at the time of making them, believe himself about to die and to be wholly without hope of recovery.

Upon the trial of defendant for murder, the following declarations of the deceased were received in evidence: "Q. Do you believe that you are about to die?" "A. Yes." "Q. Have you any hope of recovery from the effects of the injury you have received?" "A. It is hard for me to say." *Held,* that these answers failed to show enough to entitle the statement thereupon made by the deceased to be received as evidence.

APPEAL by defendant, George W. Evans, from a judgment of the Court of Oyer and Terminer, 22d January, 1886, Hon. GEORGE C. BARRETT, presiding, convicting defendant of manslaughter in the first degree.

The evidence upon the only point passed on by the General Term appears in the opinion.

*Howe & Hummell*, for defendant, appellant.

*Randolph B. Martine*, district attorney (*De Lancey Nicoll*, assistant), for the people, respondent.

DAVIS, P. J.—The prisoner was indicted and tried for the crime of murder, but was convicted of the crime of manslaughter in the first degree. The alleged crime was committed by shooting one Thomas Curry. A statement was made by Curry at the New York hospital on the first day of February, 1885, which was four days before the death of Curry.

That part of the statement upon which the question in this case arises, was in these words:

CITY AND COUNTY OF NEW YORK, *ss.:*

Statement of Thomas Currie, now lying dangerously wounded at the New York hospital in the eighteenth ward of said city and county, on the first day of February, 1885:

Q. What is your name?
A. Thomas Currie.
Q. Where do you live?
A. I reside at 23 Bond street, New York city.
Q. Do you believe that you are about to die?
A. Yes.
Q. Have you any hope of recovery from the effects of the injury you have received?
A. It is hard for me to say.

Currie then proceeded to make a statement which tended to show that he was shot by the prisoner under circumstances which warranted his conviction.

The only question is, whether this statement was properly admitted as the dying declarations of the deceased. To render such declarations admissible, the rule as established by the authorities is in these words: "That the declarant must not only believe that he is about to die, but must be without hope or expectation of recovery." The statement in this case shows that Curry, the deceased, did believe that he was about to die, but was unable to say that he was without any hope of recovery. To the question, "Have you any hope of recovery?" his answer was, "It is hard for me to say," which was equivalent, we think, to saying that he was not wholly without hope, or to give the most favorable construction that it was hard for him to say whether he had any hope of recovery or not. In any construction, it leaves the fact whether the declarant was without hope one not clearly shown by his statement. If he had hope, or had no hope, he could have answered the question as distinctly as he did the former one, "Do you believe you are about to die?" and, failing to do that, the prerequisites which the law requires were not established. The law takes such dying declaration, where the prerequisites appear, in place of sworn testimony on the trial of an accused party, because it regards one who believes himself about to die, and who entertains no hope whatever of recovery, is in a condition equal in solemnity to that of the witness who speaks under an oath taken in the presence of the court. But it does not deem such declaration as evidence, unless that solemnity is established by proof or declaration of the two facts, to wit, that the declarant believes himself about to die, and is wholly without hope of recovery. We think, in this case, the declaration of the deceased failed to show enough to entitle it to be read under the rules, and for its reception in evidence the judgment must be reversed and a new trial ordered.

The evidence touching the knife found on the prisoner when arrested, an hour after the crime, was admitted without objection. The court refused a motion, afterwards made, to strike it out. We do not feel called upon to pass upon the correctness of this ruling, based, as it evidently was, upon the omission of the counsel to make the objection at the proper time, because it

is clearly apparent that there must be a new trial of the case upon the other exception.

The judgment should be reversed, and a new trial ordered.

DANIELS and BRADY, JJ., concur.

---

NOTE.—It is, of course, well settled that in order to render the declarations admissible it must appear that they were made under a sense of impending death.

Greenleaf says: "Therefore where it appears that the deceased, at the time of the declaration, had *any expectation or hope of recovery, however slight* it may have been, and though death actually ensued in an hour afterwards the declaration is inadmissible." 1 *Greenlf. Ev.* § 158. This language was affirmed by the Court of Appeals in Brotherton *v.* People (75 *N. Y.* 161).

In People *v.* Robinson (2 *Park.* 246), Judge HARRIS said: "I do not think the declarations would be admissible. The man himself said he thought he should die; the physicians did not apprize him that he was likely to die, but encouraged him to hope that he would recover. Now, Lanagan may have had the impression that he was going to die, but to constitute dying declarations, the person making them must be '*convinced*' that he was dying; '*must see death staring him in the face.*' Mr. Lanagan was not in this state, for when he expressed the belief that he would not recover, his medical attendants encouraged him to believe and hope that he would. It would not be safe, under the circumstances, to admit the declarations."

In Reg. *v.* Jenkins (11 *Cox C. C.* 250), decided in the Court of Criminal Appeals, 1869 (before KELLY, C. B., BYLES and LUSH, JJ., CLEASBY, B., and BRETT, J.), the magistrates' clerk administered an oath to a dying person, and she made a statement. He asked her if she felt she was likely to die? She said, "I think so." He said, "Why?" She replied, "From the shortness of my breath." He said, "Is it with the fear of death before you that you make these statements?" and added, "Have you any present hope of your recovery?" She said, "None." He then proceeded to write out the deposition, and when finished he read it to her and asked her to correct any mistake that he might have made. She said, "No hope, at present, of my recovery," and he then inserted those words: *Held*, that the declaration was inadmissible, as the words "at present," introduced by the deceased, were a qualification of her previous statement that she had no hope of recovery.

The principle on which dying declarations are admitted in evidence was thus stated by EYRE, C. J.. in Rex *v.* Woodcock (1 *Leach C. C.* 502): "The general principle on which this species of evidence is admitted is that they are declarations made in extremity, when the party is at the point of death,. and when every hope of this world is gone; when every motive to false-hood is silenced, and the mind is induced by the most powerful considera-tions to speak the truth. A situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by a positive oath, administered in a court of justice." The declaration must be made under fear of impending death, and almost immediate dissolution. In Rex *v.* Van Butchell (3 *Car. & P.* 629), it was proposed to give in evi-dence the following declaration of a deceased person made on the day (May 10) when the injury was inflicted: "I feel that I have had such an injury in the bowel that I shall never recover;" and, although the surgeon en-deavored to encourage him, the deceased said he felt satisfied he should never recover. The deceased died on the 17th. HULLOCK, B., rejected it, saying: "The principle on which declarations *in articulo mortis* are ad-mitted in evidence is that they are made under the impression of almost immediate dissolution. A man may receive an injury from which he may think that he shall ultimately never recover; but still that would not be sufficient to dispense with an oath." So in Rex *v.* Crockett (4 *Car. & P.* 545), a declaration of the deceased was tendered in evidence. The de-ceased was told by the doctor that she would not recover, and was quite aware of her danger. She said, "She hoped I would do what I could for her, for the sake of her family." The doctor told her there was no chance of her recovery. BOSANQUET, J., said· "This showed a degree of hope in her mind, and, to render a declaration of this kind admissible, the deceased must have had the impression on her mind of an almost immediate disso-lution."

In Reg. *v.* Dalmas (1 *Cox C. C.* 95), the deceased's throat had been cut by a razor. One of the witnesses, on seeing the deceased, exclaimed, "My God, the woman will bleed to death before assistance comes." The deceased heard that. The witness said, "She is dying." She heard that also. She was lying on her back, bleeding profusely. A policeman whis-pered something in her ear. She lived about five minutes afterwards; she appeared to him to be sensible. The witness admitted that he might have said, "If you do not send for assistance she will bleed to death." It appeared by the depositions that the policeman had asked the deceased, "Was Dalmas the man who did it?" to which she replied, 'Yes." GUR-

KEY, B. (after consulting WILLIAMS, J.) said: "We are of opinion that this question is too doubtful a one to justify us in answering it in the affirmative. There must not only be actual nearness of death, but an absolute conviction of it in the mind of the individual. We believe that no case has gone the length of saying that the latter can be dispensed with. The decision on points of this kind must always rest upon the circumstances of each individual case; but here there is nothing but a mere inference that the deceased was probably aware she could not recover."

In Reg. *v*. Peel (2 *Fos. & Fin.* 21), WILLIS, J., said: "It must be proved that the man was dying, and there must be a settled hopeless expectation of the death in the declarant. There does appear to have been such an expectation in this case, and I shall, therefore, reject the declaration." In Rex *v*. Hayward (6 *C. & P.* 160), where the question arose whether the declarations of the deceased were admissible in evidence, as to which the facts were, that after the surgeon had examined the wound, the deceased inquired if he was in danger; the surgeon answered that he was, and that the only chance of his living was keeping himself quite quiet; upon which it was contended that the declarations made by the deceased were not made at a time when every hope in this world was gone, and when the party was aware that he must inevitably answer soon for the truth or falsehood of his statements; and that he must be taken to have some hope of recovery. On which TYNDAL, C. J., observed, that "any hope of recovery, however slight, existing in the mind of the deceased at the time of the declarations made would undoubtedly render the evidence of such declarations inadmissible." And in Rex *v*. Spilsbury (7 *C. & P.* 187), where it was proposed to give a dying declaration in evidence, COLERIDGE, J., said: "I think I ought not to receive the evidence unless I feel fully convinced that the deceased was in such a state as to render the evidence clearly admissible. It appears from the evidence of the witness Redfern that the deceased said that he thought he should not recover, as he was very ill, Now people often make use of expressions of that kind who have no conviction that their death is near approaching. If the deceased had felt that his end was drawing very near and that he had no hope of recovering, I should expect him to be saying something of his affairs, and of who was to have his property, or giving some directions as to his funeral, or as to where he would be buried, or that he would have used expressions to his widow importing that they were soon to be separated by death, or that he would have taken leave of his friends and relations in a way that showed that he was convinced that his death was at hand. As nothing of this sort appears,

I think that there is not sufficient proof that he was without any hope of recovery, and that I ought to reject this evidence." In Reg. v. Nicholas (6 Cox C. C. 120) it appeared that the deceased made a statement, and at the conclusion of it exclaimed, "Oh God! I am going fast; I am too far gone to say any more." The statement was held inadmissible by CRESWELL, J. after consulting WILLIAMS, J.), who said: "My brother WILLIAMS confirms the doubts I had on this subject, that it being possible that this man did not discover the extent of his weakness till he had made the statement, and that it was only after he made it he, for the first time, discovered that he was going fast, there is not that clear ascertainment of his consciousness of his state before he made it to render it admissible in evidence. So in Reg. v. Megson (9 Car. & P. 418), the surgeon told the dying person that she was in a very precarious state, and on the day before her death she was much worse, and, in his judgment, in imminent danger; she then made a statement to him, and immediately before she made the statement she said that she found herself growing worse, and that she had been in hopes that she should have got better, but as she was getting worse, she thought it her duty to mention what had taken place. She died next day."

In Rex v. Fagent (7 C. & P. 238), the deceased "expressed an opinion that she would not recover, and made a declaration at that time; but afterwards, on the same day, asked a person whether he thought she would 'rise again.' It was held that this showed such hopes of recovery as rendered the previous declarations inadmissible."

In R. v. Christie (Cas. Supp. C. L. 202), the deceased asked his surgeon if the wound was necessarily mortal, and on being told that recovery was just possible, and that there had been an instance where a person had recovered after such a wound, he said, "I am satisfied," and after this he made a statement. The statement was held by ABBOTT, C. J., and PARK, J., to be inadmissible as a declaration in articulo mortis, and it did not appear that the deceased thought himself at the point of death; for, being told that the wound was not necessarily mortal, he might have still had hope of recovery.

In Wellman's Case (1 East's Crown Law, 358), the deceased applied to an apothecary to relieve her of pain from which she was suffering. He told her she would not live twenty-four hours unless proper relief was afforded; that he must first know what she had done. She then made a statement, which was received in evidence. On a case reserved the judges were of opinion that it did not sufficiently appear that the deceased knew or thought she was in a dying state when she made the declaration; on the

contrary, she had reason to think that if she told what was the matter with her she might have relief and recover.

In Wilson's Case (1 *Lewin*, 78), deceased said: "I never thought I should recover. I have no great hopes of it now." LITTLEDALE, J., thought that it expressed some hope, though not a very great one, and inclined to disallow the reading of the declaration.

In Errington's Case (2 *Lewin*, 148), deceased said: "I think myself in great danger." PATTERSON. J.: . . . "I have always considered that, in order to a statement being received as a dying declaration, it must be shown that at the time the deceased made it merely, not that he considered himself in danger, but that he was without hope of recovery. It does not appear to me that the words, 'I think myself in danger,' necessarily exclude the supposition that the deceased might have nevertheless entertained some hope." The declaration was rejected.

In State *v.* Medlicott (8 *Kansas*, 257), the following writing was made by deceased before his death: "Darling: The doctor—I mean Dr. Medlicott—gave me a quinine powder Wednesday night, April 26. The effects are these: I have a terrible sensation of a rush of blood to the head, and my skin burns and itches. I am becoming numb and blind. I can hardly hold my pencil, and I cannot keep my mind steady. Perspiration stands out all over my body and I feel terribly. The clock has just struck eleven, and I took the medicine about 10.30 P. M. I write this so that if I never see you again you may have my body examined and see what the matter is.

"GOOD-BY, and ever remember my *last thoughts* were of you. I cannot see to write any more. God bless you, and may *we meet in Heaven.*

"Your loving Hubbie, I. M. RUTH."

This was ruled out as insufficient on its face; there being no other evidence as to the condition of the defendant's mind.

In Starkey *v.* People (17 *Ill.* 20), deceased said he "had a dangerous wound, and must die; that nothing could help him." The court held the declarations inadmissible, and said: "Dying declarations are, therefore, such as are made by the party relating to the facts of the injury of which he afterwards dies, *under the fixed belief and moral conviction that his death is impending and certain to follow almost immediately*, without opportunity for repentance, and in the absence of all hope of avoidance; when he has despaired of his life, and looks to death as inevitable and at hand. . . . From all this we do not doubt that the deceased, at the time he made the statement to Eick, had serious fears that he would not recover, but that he

regarded himself as a dying man, and without hope of recovery, we are not satisfied; nor do we think the proof justified their admission as dying declarations."

In King v. Commonwealth (2 *Virginia Cases*, 78), the court said: "Declarations of a dying man have sometimes been received, but then they must be the declarations of a dying man, or one so near his end that no hope of life remains. . . . But if at the time of the making of the declaration he has reasonable prospects or hope of life, such declarations ought not to be received, for there is room to apprehend he may be actuated by motives of revenge and an irritated mind to declare what possibly may not be true."

In Smith v. State (9 *Humph.* 25), the deceased stated that she "was satisfied she could not live," and the court held the declarations inadmissible.

Lewis v. State (9 *Smedes & Marshall* [*Miss.*], 120) declared that: "The law is that to authorize their introduction it must be established as a previous fact that the declarant was sensible that he was on the very verge of dissolution. . . ." "It is the belief of the declarant that his wound is mortal, and that his account with time is to be speedily closed, that renders the declarations admissible."

In Robbins v. State (8 *Ohio* [*N. S.*], 163), it was said: "It is essential to the competency of dying declarations that it should be made to appear to the court they were made under a sense of *impending death, excluding* from the mind of the dying person *all hope or expectation of recovery.*"

In Brakefield v. State (1 *Sneed* [*Tenn.*], 218), it was said: "But declarations made merely in fear and apprehension of death are not admissible. The mind must be convinced that death is impending and almost immediate."

Where abortion is not deemed homicide, the dying declarations of the woman are not competent. Railing v. Commonwealth, 7 *Crim. L. M.* 105; *Contra*, Montgomery v. State, 80 *Ind* 338.

Where declarant has no hope, though physicians may have hope, his dying declarations are relevant. R. v. Mosley, 1 *Mood.* 97; People v. Grunzig, 1 Park. 299.

The question is whether the declarant was in danger of death and had no hope of recovery. How long he may have lingered is immaterial. In two cases he has lingered seventeen days. Nolen v. State, 14 *Tex. App.* 474; Commonwealth v. Cooper, 5 Allen, 495.

Declarations were made on the morning two days after receiving the wound. Declarant died the evening of the day on which the declarations were made. A Roman Catholic priest administered the last rites, in which

declarant participated. At some time before the declaration was made declarant, upon being asked whether he felt as though he was going to die, replied that he did and said he did not think he would live to see the trial. Shortly after the declaration he said it was hard to die. *Held,* admissible. State *v.* Cantieny (Minn.), 24 *N. W. Rep.* 458.

From the first, declarant was greatly prostrated by loss of blood. The wife testified that she had visited him at the hospital. "Up to twelve o'clock Monday," testified the wife, " he spoke hopefully of his condition. About one o'clock Monday he said, ' If I must die, I will say that Tip Curtis is the man who cut and killed me.' He soon after called for the insurance policy on his life, which was made payable for the most part to me, and had it read to him. He asked me if that was satisfactory. At six o'clock he called me to his bedside and spoke of death and seemed to be sinking rapidly." *Held,* in order to render a statement admissible as a " dying declaration," it is not necessary that the deceased should state in language at the time of making, that he was conscious of impending dissolution. It is sufficient if the facts and circumstances reasonably satify the judge that the declarant was *in extremis* and laboring under the impression of impending or almost immediate dissolution. Curtis *v.* State, 14 *Lea (Tenn.),* 502.

On the first night after the wound, declarant was in fear of death and declarations were made in view of death impending. Several days after the witness said, "Jim, I hope you will get well." Declarant answered, " I hope so, too." *Held,* that the original declarations were admissible. Swisher *v.* Commonwealth, 26 *Gratt,* 263.

The declarant immediately after the fatal shot was fired exclaimed, "My God, Simpson, you have shot me." Upon being questioned a few moments later, she reiterated that Simpson had shot her. *Held,* that these declarations were admissible. People *v.* Simpson, 48 *Mich.* 474.

Declarant, though encouraged by those around him, said, "I have got my death wound. I think I am going to die. I believe I am going to die from the wound." He requested his wife to be sent for, so as to settle up affairs. His wife came and stayed with him till he died. She testified that he said he would never recover. Court inferred that he was conscious of impending death and *held* his declarations relevant. People *v.* Abbott, 6 *Crim. L. M.* 73.

The doctor first saw declarant on Friday night and gave her encouragement. On Saturday there were some hopes, but she was sinking. She said, "Doctor, I hope you can save me, but I don't believe you can."

Monday she and her friends were informed that she was sinking. **Her** declarations were *held* admissible. Maine *v.* People, 9 *Hun*, 115.

The question asked was, "I want to know first whether you consider yourself as dying?" Answer. "I am satisfied I am dying." Declarations *held* admissible. Small *v.* Commonwealth, 91 *Pa. St.* 304.

Declarant said that he would take the medicine, but that the doctor could not save him. The expression "could not save him" was used more than once. Declarant said, "If I have another one [spasm] it will take me off." "Well, boys, I have been a faithful old blacksmith to you, but they have got me this time." Other circumstances showed that the physician did not say he was in danger, that the declarant did not appear to be very sick, that outside of these words there was nothing in his conduct indicating that he thought he was going to die. *Held* admissible. Also in this connection see People *v.* Gray (61 *Cal.* 164). Where signs were made. Jones *v.* State, 71 *Ind.* 66.

Where atheists are incompetent to testify, their dying declarations are irrelevant. Donnelly *v.* State, 26 *N. J. L.* 463, 601. But where that disability is removed, their dying declarations are relevant. People *v.* Chin Moon Son, 51 *Cal.* 597; State *v.* Elliott, 45 *Iowa*, 486. Declarations of very young children not competent. 1 *Greenl. Ev.* § 157.

Declarations as to facts attending the murder, made by the declarant, are competent. State *v.* Smith, 49 *Conn.* 377; People *v.* Grunzig, 1 *Park. Crim.* 299.

Declarations as to state of feeling between declarant and defendant, not competent. Declarant said "he had nothing against defendant and did not know that the defendant had anything against him." *Held*, not competent for the prosecution. Reynolds *v.* State, 68 *Ala.* 502; 4 *Crim. L. M.* 949.

Declarant said, "I don't know any reason that Fong Ah Sing had for shooting me, unless it was that a few days before the shooting I was bathing my feet upstairs over a room in which Fong Ah Sing was sitting, and I spilled a little water on the floor and some of it leaked through the floor and fell on Fong Ah Sing. Fong Ah Sing was very angry thereat and told the proprietor of the house that I must apologize and make him some present to prevent bad luck coming upon the house. The proprietor did make some little present to Fong Ah Sing and I supposed the matter was settled." *Held* not competent as not part of the *res gestæ*. People *v.* Fong Ah Sing, 5 *Crim. L. M.* 66; 64 *Cal.* 253.

"What reason, if any. had the man for shooting you?" Answer. "Not

any, that I know of. He said he would shoot my damned heart out." *Held* admissible and not the expression of an incompetent opinion. Boyle v. State, *Indiana Sup. Ct.* 1886; 7 *Crim. L.* 655; but see dissenting opinion.

Declarant said, "I don't think he would have struck me if I had not provoked him." Competent to prove the fact of provocation. Rex v. Scaife, 1 *Moo & R.* 551.

Declarant said, "I think that this man, Henry Wasson [the defendant], is the man that shot me." Not competent. People v. Wasson, 7 *Crim. L. M.* 673.

Declarant said, "I know George Warren shot me, for he threatened me." *Held*, incompetent. Warren v. State, 9 *Tex. App.* 619.

The general rule that declarations of the deceased are admissible only when they relate to facts and not to mere matters of opinion is subject to the exception that declarations of the mere opinions of the deceased are admissible where they are favorable to the accused and explain the conduct or motives of the deceased. Haney v. Commonwealth (Kentucky), 5 *Crim. L. M.* 47.

The court determines the admissibility of the declaration, the jury its weight. Campbell v. State, 38 *Ark.* 498.

It is in the discretion of the trial court whether it will allow the preliminary proof (requisite to show that the declaration was in conformity with law) to be given in the presence of the jury or whether it will send the jury out during the presentation of such proof. Doles v. State, 97 *Ind.* 555.

Court erred in the instruction to the jury to give the same weight to dying declaration that they would had deceased testified. The sense of impending death is very often not equal to the sanction of an oath and the great right of cross-examination cannot be exercised. State v. Vansant, 80 *Mo.* 67.

Dying declarations are admissible in evidence regardless of the fact that there may be other evidence as to the transaction. Curtis v. State, 14 *Lea* (*Tenn.*), 502; Payne v. State, 61 Miss. 163.