73 So.2d 382

GRIGGS et al.   v.   STATE.

4 Div. 251.

Court of Appeals of Alabama.

May 18, 1954.

Rehearing Denied June 15, 1954.

Brassell & Brassell, V. Cecil Curtis, Phenix City, for appellants.

Si Garrett, Atty. Gen., Wm. H. Sanders, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The indictment against the appellants, omitting the formal parts, charge that they "set up, or were concerned in setting up or carrying on, a lottery," etc.

The appellants filed respectively a motion to quash, and a demurrer to the indictment, each of which were overruled. Substantially the same grounds were assigned in support of the demurrer as were assigned to the motion to quash.

The indictment follows the form prescribed in our code for such offenses, Section 259, Title 15, No. 71, Code of Alabama 1940, and was not subject to quashing, or to demurrer. Reynolds v. State, 29 Ala. App. 139, 193 So. 192; Holt v. State, 28 Ala.App. 219, 181 So. 514.

However, during the trial and upon the State offering in evidence as an exhibit a Wagering Tax Receipt issued by the United States Bureau of Internal Revenue, the appellants interposed an objection to the admission in evidence of such receipt, and as grounds for such objection assigned substantially the same grounds as were assigned to the motion to quash and to the demurrer. We will revert to a consideration of these grounds later in this opinion.

As a background to a clearer understanding of this case we think it well to now call attention to the provisions of Sections 302

(8) (9) and (10), Title 14, Code of Alabama 1940 Pocket Part, which act was approved 17 September 1953, and is as follows:

"302(8). The holding, owning, having in possession of, or paying the tax for a wagering occupational tax stamp issued by the internal revenue authorities of the United States shall be held in all the courts of this state as prima facie evidence against the person holding such stamp in any prosecution of such person for violation of the gambling laws of this state.

"302(9). In cases where the proper prosecuting officers shall produce said stamp or certified copy, the grand jury may indict the holder of such stamp or the proper prosecuting officer may file information against the holder of such stamp without further proof, charging such holder with the violation of the Alabama gambling laws.

"302(10). Upon the trial of such person, proof of the owning, holding or possession of such stamp may be made by two witnesses who have seen such stamp in the place of business of the holder or on his person, or by the production of the original stamp with proof by one or more witnesses that it is the property of the defendant, or by production by the state of a copy of such stamp certified by the director of the issuing federal internal revenue district as being a copy of the stamp originally issued to the defendant. Proof made as herein provided shall be sufficient evidence, without explanation, to convict of violation of the gambling laws."

The evidence presented by the State tended to show that on or about the 29th of September 1953, Albert Fuller and Ashie Roberts, Deputy Sheriffs of Russell County, went to the place of business of A. C. Griggs, and Louis Mathis. There they found a wagering tax stamp issued by the United States Director of Internal Revenue for Alabama. This stamp was surrendered to the officers by appellant Griggs, the officers giving their receipt for the stamp.

Over appellants' objection this stamp was received in evidence.

Among other things it shows that the stamp was issued to A. C. Griggs and Louis Mathis, 613 5th Avenue, Phenix City, Ala.; that it is a tax receipt and not a license; that it was for a wagering tax, and was issued by the United States Director of Internal Revenue for Alabama for the period beginning August 1953, and expiring June 30, 1954.

This stamp also bears the following legend:

"This stamp does not authorize the commencement or continuance, contrary to the laws of any State, of the Business or occupation with respect to which issued. The stamp must be posted in the taxpayer's place of business. If he has no fixed place of business, he must carry the stamp on his person and exhibit it, upon request, to any officer or employee of the Bureau of Internal Revenue. The payment of the taxes imposed by Chapter 27A of the Internal Revenue Code shall not exempt any person from any penalty provided by a law of the United States, or of any State, for engaging in a wagering activity. (Sections 3276, 3297 IRC [26 U.S.C.A.])"

On cross examination each officer testified that they did not see any gaming, or any lottery being carried on at the time of their visit, nor did they know of any lottery being carried on by the appellants.

Each of the appellants testified in the trial below.

The tendency of their testimony was to the effect that while they had applied for and been granted the wagering tax stamp referred to above, and while they had conducted a lottery known as "the bug," they each insisted that they had discontinued all lottery operations on 15 September 1953, some two days previous to the effective date of the act of 17 September 1953, supra. Sections 302(8), (9), and (10), Title 14, supra.

608

On cross examination they admitted that they had paid a ten per cent tax on gaming gains for the month of September, such payments being made 1 October 1953, but they contended that such payments covered only the operations conducted during the first two weeks of September 1953.

As before stated, the wagering tax stamp was received in evidence over the objection of the appellants. Numerous grounds were assigned in support of the objection. Several of the grounds question the constitutionality of Sections 302(8), (9), (10), Title 14, supra.

Counsel for appellants argue that said act is unconstitutional in that: 1, it is an ex post facto law; 2, that it attempts to usurp the functions of the judiciary; and 3, it denies the appellants the right to be confronted by witnesses against them.

The first two grounds above may well be discussed jointly.

It must be noted that Sections 302(8), (9), and (10), supra, in nowise attempt to create any absolute presumptions from the possession of a wagering tax stamp. The possession of the stamp merely creates an evidential presumption that did not exist prior to the enactment.

■ No one has any vested right in any rule of evidence. The legislature may change such rules at any time, and if an accused is not deprived of any substantial right by such change no constitutional right is infringed and due process of law is observed.

■ The recognized test even today in determining whether a law violates the ex post facto provisions is the test laid down in Calder v. Bull, 3 U.S. 386, 1 L.Ed. 648, decided by the United States Supreme Court in 1798. Justice Chase sets forth four tests: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

In Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 210, 28 L.Ed. 262, the Supreme Court of the United States had before it the question of whether an act, permitting a crime to be established by certain classes of witnesses whom at the time the crime was committed were incompetent to testify, was an ex post facto law.

The following excerpt from the opinion in the Hopt case, supra, furnishes a sufficient answer to appellants' claim that our statute is an ex post facto law:

"Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed, nor provide a greater punishment therefor than was prescribed at the time of its commission, nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed. The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed, might, in respect of that offense, be obnoxious to the constitutional inhibition upon ex post facto laws. But alterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime

and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure."

To like effect is the doctrine of Wester v. State, 142 Ala. 56, 38 So. 1010.

■ It is now well established that a legislative body may provide by statute that certain facts may be prima facie or presumptive evidence of other facts, provided reason and experience connect the ultimate fact presumed with the facts proved. Such statutes are within the powers of the legislative body to enact, they are not considered an infringement upon the judiciary, and are not violative of any other constitutional provisions. State v. Thomas, 144 Ala. 77, 40 So. 271, 2 L.R.A.,N.S., 1011; State v. Vann, 150 Ala. 66, 43 So. 357; Fitzpatrick v. State, 169 Ala. 1, 53 So. 1021; Ex parte Woodward, 181 Ala. 97, 61 So. 295; Dees v. State, 16 Ala.App. 97, 75 So. 645. See also Zeigler v. South & North Ala. R. Co., 58 Ala. 594; Tot v. U. S., 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519. Additional authorities from virtually every jurisdiction may be found in 51 A.L.R. 1139, and 86 A.L.R. 179.

The connection between the ultimate fact presumed, i. e., a violation of our anti-gambling laws, and the facts proved, i. e., the possession of a federal wagering tax receipt, is obvious, and requires no discussion. We can think of no reason for possessing such stamp other than to engage in gambling.

The fact that a wagering tax has been paid to the federal government, and a wagering tax stamp issued pursuant to such payment, in nowise affects the constitutionality of our statute providing that the possession of such stamp shall create an evidential presumption of a violation of our anti-gambling laws. People v. McBride, 234 Ill. 146, 84 N.E. 865; State v. Donato, 127 La. 393, 53 So. 662; State v. Intoxicating Liquors, 80 Me. 57, 12 A. 794; State v. Dowdy, 145 N.C. 432, 58 S.E. 1002; Hargrove v. State, 8 Okl.Cr. 487, 129 P. 74; Brinkley v. State, 125 Tenn. 371, 143 S.W. 1120; Runde v. Com., 108 Va. 873, 61 S.E. 792.

Particularly is this true in view of the warning carried on the stamp itself that: "This stamp does not authorize the commencement or continuance, contrary to the laws of any State, of the business or occupation with respect to which issued."

Appellants' contention that Sec. 302, supra, is unconstitutional for the reason that it denies him confrontation of witnesses is without merit. An exception to the right to be confronted by witnesses exists where facts to be proven are essentially documentary. Woodward v. State, 5 Ala.App. 202, 59 So. 688; Green v. State, 66 Ala. 40; Hawes v. State, 88 Ala. 37, 7 So. 302; Reid v. State, 168 Ala. 118, 53 So. 254.

■ The evidential presumption created by Section 302, supra, established the prima facie guilt of these appellants of the offense for which they were indicted.

Their "explanation" was that they had obtained the federal wagering tax stamp. This stamp covers the period beginning August 1953 and expiring June 30, 1954; that they had operated a lottery prior to and until the 15th of September 1953. Thus by their own testimony they are guilty of the offense charged in the indictment even if it be argued that the State was limited to showing an offense to the period covered by the stamp. The court was therefore amply justified in its judgment of guilt under the facts and the legal principles governing.

■ The judgment entered fails to show the amount of costs, though it does show that the appellants were sentenced to twenty days upon their failure to pay or properly confess. This cause must therefore be remanded for proper sentence.

Affirmed, but remanded for proper sentence.