Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:
 "The Grand Jury of said county charge that before the finding of this indictment Billy Ray McCrary whose name to the Grand Jury is otherwise unknown than as stated, did buy, receive, conceal, or aid in concealing, one brown 1977 Dodge Maxi Van Motor Vehicle with a quail Hunters Club sign on the door, Tennessee Tag Number 45474E, identification number B36BF7X210596, of the value of six thousand dollars, ($6,000.00), the property of Hershel Leamon Bonner, knowing that it was stolen, and not having the intent to restore it to the owner, contrary to law, and against the peace and dignity of the State of Alabama."
At arraignment, in the presence of counsel, he interposed a plea of not guilty. The jury returned a verdict finding the defendant guilty as charged in the indictment and the court sentenced him to ten years imprisonment in the penitentiary.
The evidence adduced by the State showed that, on or about March 1, 1979, H.L. Bonner resided at Route 1, Leesburg, Alabama, in Cherokee County, Alabama. On or about March 16, 1979, his 1977 Dodge van was stolen. According to the testimony of Mr. Bonner, his van was light tan-dark brown in color and was a fifteen passenger van with a large air conditioner and had a V-8 engine. Mr. Bonner stated that at the time of the theft the value of the van was about $7,500 to $8,000. At the time the van was stolen it had an Alabama license tag issued in Cherokee County and did not have a metal quail hunter's sign anywhere on the van.
Mr. Bonner identified the van by the identification number B36BF7X210596 from a copy of his original title sent to him by the State of Alabama. He stated that he did not have the original title as he had transferred it to Allstate Insurance Company at the time the company settled his claim and he had transferred all his rights, title and interest to the vehicle to the company.
During March, 1979, Hugh Richard Taylor was living at 1807 Rankin Place in Huntsville, Madison County, Alabama. He was employed at T.V.A. in Bellefonte and was acquainted with Fred McCrary, the brother of appellant, who lived in Jackson County, Alabama. During the middle of March, 1979, Taylor went to the trailer home of appellant looking for Fred McCrary. While at appellant's home in Jackson County Taylor saw a large 1977 model Dodge two-toned brown Maxi Van parked in appellant's yard. Appellant offered to sell the van to Taylor for $600.00, but Taylor declined the offer stating that he was not interested.
Approximately a week later Taylor returned to appellant's home in Jackson County and observed that the van was still in appellant's possession. Appellant again brought up the sale of the van with Taylor and Taylor told appellant he would purchase the van if appellant would deliver it to him in Huntsville, Madison County, Alabama. Appellant agreed to make the delivery. The following Sunday appellant drove the van to Hunstville and called Taylor at his home and informed him that the van was in Huntsville and arranged to meet Taylor in the North Mall. On this occasion appellant was accompanied by his wife, and Taylor's son drove him to meet appellant at the North Mall. Taylor drove the van to his home in Huntsville and his son followed in Taylor's car. When the van was driven to Huntsville it had an Alabama license tag on it but when Taylor returned from his house he noticed the tag had been removed. Taylor gave appellant $200.00 cash and *Page 754 
three long guns for the purchase of the van. Taylor's son, Charles, was present when the sale and purchase transaction were had, but he did not see how much money his father paid appellant and did not see the three long guns change hands.
Taylor kept the van several weeks and some time in May, 1979, he rented the van to Gene Day. Taylor knew Day as they both were employed at T.V.A. There was no written rental agreement.
On cross-examination Taylor testified that he assumed the van was stolen when appellant sold it to him at such a low price. He further testified that he had been indicted in a separate case involving the same van but the case against him was still pending. He stated he had not been promised anything to testify against appellant.
Gene Day lived in Chattanooga, Tennessee, and rented the van from Taylor to haul workers to and from the T.V.A. job site. Day described the vehicle as a Sportsman Maxi Van that could accommodate 15 passengers. He had possession of the van for about two months and never bought a tag for it. He took a Tennessee tag which was registered to a Plymouth Van and put it on the Dodge Van he rented from Taylor. Day also put a metal quail hunter's sign, "Mountain Cove Hunting Preserve," on the back of the van.
In August, 1979, Captain Keith Smith of the Scottsboro Police Department went to the T.V.A. Bellefonte Construction site looking for the stolen van. The officer located a two-toned brown 1977 Dodge Maxi Van being driven by one Bois Kirby. The van had a metalic quail hunter's sign on the back of the vehicle and had a Tennessee license tag number 45474E. The officer checked the VIN number on the vehicle and found it to be B36BF7X210596. He ran a record check on the VIN number and found the van was reported stolen from Hershel Leman Bonner, Route 1, Leesburg, Alabama, on March 16, 1979.
Officer Smith seized the vehicle and placed it in storage at City Hall where it remained until it was released to Allstate Insurance Company. The officer further testified that he took a statement from Taylor and that he did not promise him anything in any shape, form or fashion to get him to tell from whom or under what circumstances he obtained the stolen vehicle; that no rewards or other inducements were made or held out to Taylor, nor were any threats made to Taylor, to get him to say how he came into possession of the van.
Jim Lowery, Claims Supervisor for the Allstate Insurance Company, testified that he was the keeper of the records of Allstate Insurance Company and that it was the business of the company to keep records in the ordinary course of its business. He further testified that the insurance company made a copy of the original certificate of title issued to Mr. Bonner when the company paid him for his claim and he produced the copy and the copy was admitted into evidence as State's Exhibit No. 1. The copy of the original certificate of title showed the VIN number to be B36BF7X210596.
Appellant did not testify in his own behalf.
Appellant raises several issues on this appeal which he claims constitute reversible error. His major contentions are that the court erred: (1) in refusing to find that Hugh Richard Taylor, Sr., was an accomplice to the crime charged against him; (2) in allowing State witness Jim Lowery to testify since his name and the documents from which he testified were not supplied to him prior to trial; (3) in admitting a copy of proof of ownership of vehicle in question in violation of the best evidence rule; (4) in allowing the State to prove the crime was committed in Jackson County, Alabama; (5) in ruling the indictment was sufficient absent the date, time or year of the alleged offense; and (6) denying his motion for a bill of particulars.
The trial court was entirely correct in ruling that Hugh Richard Taylor, Sr. was not an accomplice of appellant in the theft of the van in question. The evidence is uncontradicted that Taylor went to appellant's home in Jackson County, Alabama, looking for appellant's brother, Fred *Page 755 
McCrary. While in Jackson County Taylor observed the stolen van parked at appellant's home. Taylor stated:
 "The van was sitting there, and he (appellant) was telling me, you know, he wanted to get rid of it; and if I was interested, and he told me how much he wanted for it, and I told him at the time I wasn't interested."
Appellant had bought, received, or concealed the stolen van before Taylor entered the picture, and as a matter of law Taylor did not, and could not, aid or abet appellant in any manner, form or fashion in the theft of the vehicle. About a week later Taylor returned to appellant's home and agreed to buy the van if appellant would deliver it to him in Huntsville, Madison County, Alabama. The following Sunday appellant delivered the van to Taylor in Huntsville where Taylor purchased the stolen vehicle. Taylor's crime began when appellant's acts ended. Although both men bought, received, or concealed the same vehicle the transactions occurred at different time periods, different localities, and in separate crimes.
Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. The trial court properly held Taylor was not an accomplice as a matter of law. Pryor v.State, 47 Ala. App. 706, 260 So.2d 614; Leonard v. State,43 Ala. App. 454, 192 So.2d 461; Kyles v. State, Ala.Cr.App.,358 So.2d 797.
Appellant's counsel filed a pretrial motion for documentary evidence and the names and addresses of all witnesses. This motion was granted by the trial court and the State complied with the court's order. During the trial when Jim Lowery was called by the State to testify counsel for appellant objected on the ground of "surprise" since his name and the document in his possession had not been furnished by the District Attorney. Jim Lowery did not become a witness until after the trial began. Mr. Bonner testified that the van that was stolen from him had identification number B36BF7X210596, and that in April, 1979, he transferred any future title to the van to Allstate Insurance Company, after the company settled his claim, and sent the company the original title. Mr. Bonner had a copy of the original title and when the State sought to introduce the copy into evidence the objection of defense counsel was sustained. Defense counsel argued that the State could subpoena Allstate as "they are the proper custodian of those records." That is precisely what the State did. The District Attorney announced that the keeper of the records left Birmingham at 12:30 with the necessary file. A short recess was granted awaiting the arrival of Jim Lowery.
Mr. Lowery testified that the record he had was kept under his custody and control as the Claims Supervisor and it was kept in the ordinary course of business. He further testified he had the file of H.L. Bonner, Route 1, Box 23, Leesburg, Alabama, for a 1977 Dodge van and that he had a copy of the certificate of title. He stated that the original was not available and the copy, State's Exhibit No. 1, was admitted into evidence as the best evidence rule had been satisfied. The proper predicate was laid under the provisions of Section12-21-43 and Section 12-21-44, Code 1975. The copy of the certificate of title showed the VIN number of the stolen vehicle to be B36BF7X210596. This identical number was laid in the indictment and was testified to by Mr. Bonner and Officer Keith Smith.
The constitutional rights of an accused to confront the witnesses against him is not violated by the use of business records. Neal v. State, Ala.Cr.App., 372 So.2d 1331, writ denied, Ala., 372 So.2d 1348.
Appellant also contends that he was entitled to a directed verdict because the State failed to prove venue. We do not agree. Venue may be established by the testimony of one witness. Mr. Hugh Richard Taylor, Sr., testified that he saw the vehicle in question parked in appellant's yard in Jackson County on two occasions and on the last occasion he agreed to *Page 756 
purchase the stolen van provided appellant deliver it to him in Huntsville, Madison County, Alabama. Ligon v. State,50 Ala. App. 658, 282 So.2d 97.
Next, appellant contends the indictment was defective for failure to allege the date, time or year of the commission of the offense. This contention is without merit. Section 15-8-30, Code 1975, provides:
 "It is not necessary to state the precise time at which an offense was committed in an indictment; but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense."
See, Boswell v. State, 290 Ala. 349, 276 So.2d 592; Camp v.State, Ala.Cr.App., 359 So.2d 1187; Henry v. State, 57 Ala. App. 383, 328 So.2d 634.
Appellant claims the trial court erred in denying his motion for a bill of particulars. A defendant is not entitled to a bill of particulars under Alabama law. Johnson v. State, Ala.Cr.App., 335 So.2d 663, certiorari denied, Ala.,335 So.2d 678.
The jury returned to the courtroom with a verdict of guilty as charged in the indictment. At the request of appellant the jury was polled. One juror answered that the verdict was his with one reservation. This juror stated that he had a question for the court. The jury was sent to the jury room to write the question. The question was: "Why did Billy Ray and his wife not testify?" The court instructed the jury that he could not answer that question and further charged the jury:
 "The court, again, emphasizes to you that your verdict cannot be based on speculation, conjecture, or suspicion; this is a matter that is not to be, this question is a matter not even to be considered by the jury in any way. Do you understand that?"
After the court instructed the jury they could not consider the fact that the defendant and his wife did not testify the juror who posed the question and all the remaining jurors were polled and each responded that the verdict was his verdict. Appellant's counsel did not move for a mistrial, object to the manner in which the jury was polled, nor object to the verdict of the jury. In this state of the record nothing is presented for review. Perry v. State, 56 Ala. App. 454, 322 So.2d 745.
The court stated that he would defer sentencing appellant pending the filing of a presentence report. Appellant spoke up and said, "I will just as soon do it today." The District Attorney then requested a presentence report and the request was granted.
The presentence report revealed that appellant had previously been convicted of eight felonies since November, 1962. Appellant was asked if he had anything to say why the sentence of the law should not now be pronounced upon him. The defendant said, "nothing." He was thereupon sentenced to ten years in the penitentiary.
In Character v. State, 51 Ala. App. 589, 287 So.2d 916, this court held:
 "It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142; Buckles v. State, 291 Ala. 352, 280 So.2d 814 (1972).
 "The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. Stanley v. State, 46 Ala. App. 542, 245 So.2d 827.
 "In Buckles, supra, our Supreme Court cited with approval the following quotation from the case of Aron v. United States, (8 Cir.,) 382 F.2d 965, 970:
 "`The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the *Page 757 
possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.'"
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.