Assault in the third degree; one year and $500. fine.
Appellant was indicted for beating his two-year-old stepson with a belt and belt buckle, resulting in bruises and swelling. Over appellant's objection at trial, the court admitted copies of the child's hospital records indicating the following notations by the examining physician.
 "Impression: Child abuse through physical beatings. Probable neglect.
. . . .
The child obviously was a victim of child abuse.
 "Final Diagnosis: Child abuse Right upper lobe pneumonia Multiple ecchymosis, bruises contusions, penile edema — all secondary to child abuse."
Appellant made the following objection to the offer of the hospital records:
 "MR. PRESTWOOD: [Defense counsel] May it please the Court, Mr. McGill has just offered in evidence over our objection, State's Exhibit One, which is a series of sheets purportedly part of the records of the Mizell Memorial Hospital. And, on the first sheet of the summary sheet, which is the record sheet in the whole exhibit, you have a child abused through physical beatings, probable neglect, final diagnosis, child abuse.
 "Now Your Honor, I'm sure realizes that those are conclusions of law that the doctor could not make and they could not be introduced by a live witness nor could they be introduced in the form of records.
 "The child abuse is not a diagnosis. The only thing that the doctor could say that would be admissible would be what he put down here, bruises, contusions, penal edema, all secondary to child abuse, could not put in there, Your Honor.
 "MR. McGILL: May it please the Court, I think, that is proper for Mr. Prestwood's cross-examination of the doctor with reference to statements like that.
 "But I think, it is admissible since it is a part of the hospital's records and it is made in the usual and normal course of business in the keeping of the records.
 "THE COURT: I think, under the business records act, as they have construed it recently, it would be admissible. The credibility of it would be for the jury and for argument. But, I think, under the business records act they are admissible.
 "MR. PRESTWOOD: But, Your Honor, it is not anticipated that the person who makes these records would draw these conclusions and if he doesn't testify to it in the courtroom, how can he testify in the back door, indirectly on the summary sheet.
 "THE COURT: I overrule the objection, based on the business records act." *Page 156 
The State also called the examining physician, Dr. Reddock Williams, to testify at trial, at which time the following occurred:
 "Q. [By Assistant District Attorney] Dr. Williams, I will ask you if back on March the nineteenth of this year if you had an occasion to see and examine a patient by the name of Joseph Michael Falshing?
"A. Yes, sir.
"Q. Where did you see this patient?
"A. In my office.
"Q. Who was he accompanied by?
"A. His mother.
. . . .
"Q. Did you examine the child, at that time?
"A. Yes, sir.
. . . .
 "Q. Tell the Court and jury, after you completed your examination, what it was that you found with reference to the child having any evidence of trauma?
"A. The child — May I read my office notes?
"MR. PRESTWOOD: We object.
 "THE COURT: You can refer to them to refresh your recollection.
 "A. All right. The child was approximately two years old, white male, and had bruises both old and new on his head, face, upper back and buttocks. His hair was thinned, pulled out or falling in multiple locations. He had bruises on his scalp. He had bruises, abrasions and minor scratches on the face and lips. He also had some swelling of the penis, of the type that is called paraphimosis. He had gross — by that I mean large — old and new bruises of the buttocks back and head. And, at that time, I thought the child had probably —
"MR. PRESTWOOD: Object.
 "THE COURT: Don't say, what you thought. Just say what your findings are.
 "A. Well, my diagnosis, at that time, was child abuse.
 "MR. PRESTWOOD: Now, we object and move to exclude. And, at this time, we move for a mistrial.
 "THE COURT: Ladies and gentlemen of the jury, that last statement would be excluded from your consideration.
 "Is there anyone of you that does not think that you could put that out of your mind and render a fair and impartial verdict based on the evidence? . . . .
 "Any of you think that you could not render a fair and impartial verdict at this time, and if so, let it be known. . . . .
"Motion for mistrial is overruled."
Outside the presence of the jury, the following occurred:
 "MR. PRESTWOOD: Now, if the Court please, we specifically objected to the hospital records showing that how unfair it was to let a record in there that had conclusions of a witness, in this case Dr. Williams. Where he referred to the diagnosis as child abuse.
 "Now Your Honor, overruled our objection and records are in there. And, I made it known to the Court that Dr. Williams could not say that in the courtroom. That, that would be highly prejudicial. And, he could not in any event refer to it as child abuse.
 "And, yet, that is what he has done. And, he has been on the stand less than three minutes and he has referred to it as child abuse. And, we cannot, with the feeling about child abuse being what it is and justifiably so, we cannot assume that the jury is going to erraticate [sic] that from their minds.
 "We are just fooling ourselves if we think that they are. It has been nailed down as hard as it can be that the doctor found it to be child abuse. And, no matter what else we say or what we do that is going to be in the jury's mind.
 "THE COURT: I overruled the motion for a mistrial. And, I want to caution you, Mr. McGill, about anything else of that nature in the evidence. I would have to grant the motion.
 "Now, Dr. Williams, you think that child abuse is a physical finding. That is a mixed question of law and fact, for the jury to determine. So, you, just *Page 157 
from your examination tell what the physical findings were on the child and not your conclusions as to how they got there.
 "MR. McGILL: Let me ask him a question, Your Honor, so we can get something in the record on this. . . ..
 "Doctor, does the medical profession now days in their day to day course of medical profession use the term child abuse?
"DR. WILLIAMS: Yes, sir.
 "MR. McGILL: It is an accepted diagnosis by the medical profession as to the cause of the wounds or trauma that would be consistent with the type that you examined on this child, when you reached a conclusion of child abuse?
"DR. WILLIAMS: Yes, sir.
"MR. PRESTWOOD: Judge, I would like to say —
"THE COURT: I sustain the objection to that.
 "MR. PRESTWOOD: I would like to put it into the record that the medical association hasn't taken over the Courts yet.
 "DR. WILLIAMS: Judge, may I ask a question? Am I suppose [sic] to be a factual witness or just a witness or an expert witness or what am I suppose to be?
 "THE COURT: He just asked you what your physical findings were on that child, what you observed.
. . . .
 "DR. WILLIAMS: Let me ask you this, Your Honor. I just wanted to be as helpful as I can here. But, if I see that he has pneumonia and I think they had pneumonia and my diagnosis is pneumonia. That is a diagnosis from what I have observed.
 "THE COURT: That is a medical sickness, but is child abuse a medical sickness?
 "DR. WILLIAMS: Child abuse is a medical sickness. Yes, sir.
 "THE COURT: No, sir. That is a question of law, in fact, as to what a certain individual —
 "DR. WILLIAMS: No, sir. It is not known syndrome and that is my point.
 "THE COURT: Well, we are caught at this point, and I don't think that it is recognized as a known syndrome that you can testify to. That is what a jury has to say, if it occurs."
 I
In our judgment, this case must be reversed for the error of admitting portions of the hospital records to which appellant objected at trial.
Neither § 12-21-5 of the Code of Alabama 1975 (authorizing the admission of certified copies of hospital records) nor §12-21-43 of the Code of Alabama 1975 (allowing the receipt of records made in the regular course of a business) operates to admit evidence which is inherently inadmissible. Lowery v.State, 55 Ala. App. 514, 317 So.2d 365 (1974), cert. denied,294 Ala. 763, 317 So.2d 372 (1975); Greathouse v. Credit Bureau,Inc., 279 Ala. 524, 187 So.2d 565 (1966).
Section 12-21-5, supra, merely provides a procedure by which copies of hospital records may be admitted without producing the originals and without calling the custodian to lay a predicate. The statute does not allow the carte blanche admission of all hospital records; it does not do away with the rule against hearsay or the opinion evidence rule. Lowery v.State, 55 Ala. App. 511, 317 So.2d 357 (1974).
In our judgment, Dr. Williams' statement, whether written or oral, that he diagnosed the patient as a victim of child abuse was an impermissible statement of opinion on an ultimate issue in the case. A witness, whether expert or lay, may not give his opinion on an ultimate fact in issue. Wilkinson v. Duncan, Ala., 319 So.2d 253 (1975); Colvin v. State, 247 Ala. 55,22 So.2d 548 (1945); Sovereign Camp W.O.W. v. Ward, 196 Ala. 327,71 So. 404 (1916); Anderson v. State, 104 Ala. 83, 16 So. 108
(1893); Henderson v. State, Ala.Cr.App., 373 So.2d 1218, cert. denied, Ala., 373 So.2d 1221 (1979); Harris v. State,39 Ala. App. 139, 99 So.2d 201 (1957), cert. denied, 266 Ala. 697,99 So.2d 204 (1958). See Annot., 69 A.L.R.2d 22 at § 8 (1976). *Page 158 
In Colvin v. State, supra, the State properly qualified a fire chief as an expert witness in an arson prosecution. The Alabama Supreme Court ruled, however, that the witness should not have been allowed to testify that the fire was of "incendiary origin," because that phrase indicated a malicious burning and was the ultimate issue in the case.
The court observed that the witness could properly have testified to the facts underlying his conclusion, i.e., whether or not kerosene was found at the point of the fire, whether the fire burned naturally on materials of which the house was built, or whether flammables were added, and whether or not there was an even burn pattern throughout. In other words, the witness should have been allowed to relate the primary facts, but not to draw the ultimate conclusion or inference from those facts. The court noted:
 "The physical facts . . . are so simple that they can be readily understood when properly described, and it is then for the jury to draw the appropriate conclusion." Colvin v. State, 247 Ala. at 56, 22 So.2d at 549.
Similarly, in the present case, the term "child abuse" denotes a criminal beating, see State v. Ballard, Ala.Cr.App.,341 So.2d 957 (1976), cert. quashed, Ala., 341 So.2d 962
(1977), and it was the ultimate issue in a prosecution for assault on a two-year-old child. Dr. Williams should have been permitted to testify to the number, age, type, and location of wounds on the child, all of which were primary facts, but not to state his conclusion that the wounds were the product of child abuse.
Only when it is "practically impossible to reproduce or adequately describe the primary facts on which an inference is based "may a witness give a statement of ultimate fact in the form of "collective facts" or a "short-hand rendition."Broughton v. Kilpatrick, Ala., 362 So.2d 865 (1978); See alsoFirst National Bank of Birmingham v. Lowery, 263 Ala. 36,81 So.2d 284 (1955); Louis Werner Sawmill Co. v. Vinson Bolton,220 Ala. 210, 124 So. 420 (1929).
In the case before us, as in Colvin v. State, supra, the primary facts were simple enough to be explained to and understood by a jury. The appropriate conclusion was theirs to draw.
The fact that the physician's conclusion was framed in terms of a "diagnosis" does not change the result here. Although §12-21-5, supra, expressly provides that notations on hospital records, including diagnosis, shall be admissible, our Supreme Court has indicated that diagnostic evaluations are admissible only because, if the physician were a witness, his testimony would be admissible as an expert opinion. Seay v. State, Ala.,390 So.2d 11 (1980). In Seay the court observed the following:
 "It is generally stated that a hospital record of a patient, if it meets statutory requirements, is a record within the business record exception to the hearsay rule to the extent that the record covers hospital diagnosis. A business record, which takes the form of an opinion, however, will not be admissible unless the subject is a proper one for opinion testimony. Thus if a hospital record of a doctor's diagnosis of a patient in the hospital has been made in conformity with the Business Records Act, then that record, even though the diagnosis is in opinion form, is admissible because if the physician were a witness, his testimony on the diagnosis would be admissible as an expert opinion." [Citations omitted]
Notwithstanding Dr. Williams' statement to the trial judge that child abuse is a medically-recognized "sickness," "syndrome," or "diagnosis," we hold that the term "child abuse," under these facts, constitutes a conclusion involving the application of a legal definition. Opinion testimony upon a matter involving a question of law is not permitted. Ex parteDial, Ala., 387 So.2d 879, 881 (1980).
Because of the error shown, the conviction is reversed and the cause remanded to the Covington Circuit Court.
REVERSED AND REMANDED.
All the Judges concur. *Page 159