The defendant was indicted and convicted for sexual abuse in the first degree in violation of Alabama Code Section 13A-6-66
(1975). He was sentenced as an habitual offender to sixteen years' imprisonment. *Page 332 
Evidence for the State established that the victim was a ten-year-old girl whose mother was employed by the defendant. On the morning of August 24, 1981, the defendant spoke with the child's mother and offered to take the girl to get something to eat. After they arrived at the defendant's apartment, the defendant grabbed the victim's hand and took her into the bedroom. He asked her if she could keep a secret and inquired whether she wanted to have children. Then he pulled her clothes down and put his finger inside her vagina. She began to cry, told him to stop, and said she was ready to go home. The defendant took the child home about noon and the girl reported the incident to her mother, who called the police. An officer from the Youth Aid Division of the Montgomery Police Department investigated the complaint and took the child to the Jackson Hospital emergency room at 5:45 P.M., where she was examined and released at 7:45 P.M.
On cross examination, the victim testified that she did not want her mother to marry the defendant. She also admitted that she had previously made a false accusation of sexual abuse against the defendant's stepson and had been punished for it by her mother.
Over the defendant's objection, the trial court admitted the hospital emergency room report which contained the following handwritten findings:
 "History and Physical. Hymen broken — smooth edges, no evidence of recent trauma to hymen. Erythema on lateral aspect of vaginal wall bilaterally.
"Diagnosis. Recent vaginal trauma."
The report also included a typewritten notation under the space marked "Cause of Accident or Illness" which read "Sexual Abuse".
After the State rested, the defense called two teachers from the school where the victim was enrolled to testify to the child's reputation for untruthfulness.
 I
The defendant argues that the victim's hospital record should not have been admitted into evidence (a) because it constituted hearsay and (b) because it denied him his Sixth Amendment right to confront the witnesses against him.
 A The Hospital Record As Hearsay
A copy of the hospital record was admitted under Alabama Code Sections 12-21-5, 6, 7 (1975). The certificate of the custodian, attached to the envelope containing the copy of the emergency room report, was identical in form to that prescribed in Section 12-21-7. Section 12-21-6 provides:
 "When so prepared and certified, the copy of said hospital records shall be admissible in evidence in any court in the State, if and when admissible, in prima facie proof of the facts therein shown just as if otherwise verified and just as if the copy were the original. . . . All the circumstances of the making of such hospital records, including lack of personal knowledge of the entrant or maker of such hospital records, may otherwise be shown to affect the weight of such hospital records, but this shall not affect their admissibility."
However, in order to constitute an exception to the hearsay evidence rule, the hospital record must be shown to have been made in the usual course of business, as required by Section12-21-5.[1] Sections 12-2-6 *Page 333 
and -7 must be read in conjunction with Section 12-21-5.Whetstone v. State, 407 So.2d 854, 860 (Ala.Cr.App. 1981). Section 12-21-5 is a "specialized business record statute . . . which renders admissible a certified copy of hospital records that are kept in the regular course of the particular hospital's business." C. Gamble, McElroy's Alabama Evidence, Section 254.01 (7), p. 99, 1980 Supplement (3rd ed. 1977). Consequently, a copy of a hospital record will constitute an exception to the hearsay evidence rule where (1) the copy was properly certified by the custodian (Section 12-21-7), (2) the original hospital record was made and kept in the usual and regular course of business of the hospital, (3) it was in the regular course of business of the hospital to make and keep such record, and (4) the record was made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter (Section 12-21-5). Requirements (2), (3) and (4) of this predicate bring the hospital report under the business record exception to the hearsay rule. Compare Section 12-21-5
(hospital records) with Section 12-21-43 (Business Records Act). A certified copy of an original hospital record which meets the requirements of the business records act of Section12-21-43 constitutes an exception to the hearsay rule. Seay v.State, 390 So.2d 11, 12 (Ala. 1980); McElroy, Section 254.01 (7). However, hearsay in a properly certified copy of a hospital record not shown to have been made in the regular course of business is objectionable. Whetstone, 407 So.2d at 860-61; Lowery v. State, 55 Ala. App. 511, 518, 317 So.2d 357, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975).
Here, the State proved that the emergency room report was a business record by a second certificate of the custodian in addition to the one required by Section 12-21-7. On the envelope containing the victim's record was the additional certificate:
 "I further certify that these hospital records were made and kept in the usual and regular course of business of said hospital and it was in the regular course of business of said hospital to make and keep said records and that said records were made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter."
We know of no statute authorizing such a certificate and providing an extra-judicial means of establishing that a writing is a business record. "Unless a statute provides otherwise, evidence generally only comes into court through articulation by a witness." Hutchens v. State, 45 Ala. App. 507,518, 232 So.2d 687, cert. denied, 285 Ala. 755, 232 So.2d 700
(1970). See also Austin v. State, 354 So.2d 40, 42 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 44 (Ala. 1978).
However, the defendant's objection to the hospital report as hearsay did not preserve this issue for review. As in Thompsonv. State, 384 So.2d 1131, 1134-35 (Ala.Cr.App. 1979), cert. denied, 384 So.2d 1135 (Ala. 1980), the trial court was not called upon to determine whether the copy of the emergency room report was objectionable on grounds that it was not properly shown to have been made in the regular course of business or upon any ground other than the asserted grounds of hearsay and denial of the defendant's right of confrontation. *Page 334 
The defendant also argues that the admission of the notation "Sexual Abuse" under "Cause of Accident or Illness" on the emergency room record was reversible error because it constituted a conclusion on the ultimate issue in the case. He correctly cites Wyatt v. State, 405 So.2d 154 (Ala.Cr.App. 1981), for the proposition that such conclusory statements concerning the cause of a victim's injury are inadmissible. "(D)ata pertaining to the cause of the injury, unless essential to a diagnosis, should be excluded." Liberty National Life Ins.Co. v. Reid, 276 Ala. 25, 36, 158 So.2d 667 (1963).
The objection to the term "child abuse" in Wyatt, however, was specifically aimed at the inadmissibility of the conclusion. 405 So.2d at 155. Here, the defendant objected to the entire report on the basis of hearsay without specifying the impropriety of the conclusion. While the typewritten notation "Sexual Abuse" no doubt may have been based on the hearsay statements of the victim, the defendant's objection did not focus the trial court's attention on the specific matter found objectionable. See Anderson v. State, 35 Ala. App. 111,44 So.2d 266 (1950).
"When a party objects to a document as a unit that contains admissible as well as inadmissible matter, the trial court is justified in overruling the objection." Smith v. State,354 So.2d 1167, 1172 (Ala.Cr.App. 1977), cert. denied,354 So.2d 1172 (Ala. 1978). A defendant cannot complain on appeal of the admission of a written statement over his general objection where some parts of the document were admissible. It is not for the trial court to separate the admissible from the inadmissible. Shorter v. State, 63 Ala. 129 (1879); Johnson v.State, 32 Ala. App. 101, 104, 22 So.2d 102, reversed on other grounds, 246 Ala. 630, 22 So.2d 105 (1945). The objection should separate the good from the bad, Brown v. State,40 Ala. App. 226, 112 So.2d 500, cert. stricken, 269 Ala. 180,112 So.2d 504 (1959); Haney v. State, 20 Ala. App. 236, 101 So. 533, cert. denied, Ex parte Haney, 211 Ala. 614, 101 So. 537 (1924);Patterson v. State, 8 Ala. App. 420, 62 So. 1023 (1913).
Further, the record reflects that the defendant did specifically object to "certain matters with the reports themselves that may be excluded as being an opinion." The court then deleted those portions of the hospital record containing the victim's explanation of her injuries. From the record:
 "THE COURT: Let's use the copy that has deleted the statement of the child as incriminating to your client, Mr. Sheehan, whereas it is customary to take that as part of it. They also ask the alleged injured person what is the matter with you. What happened to you. That is part of this record but nonetheless, out of excess of caution, I am inclined to not put it in."
From the foregoing, it is clear that the defendant had the opportunity to point out and have deleted from the copy shown to the jury any portions of the hospital record which he found to contain inadmissible opinions or conclusions. We, therefore, find that the report as a whole was admissible as a business record exception to the hearsay rule, and that the inadmissibility of the term "Sexual Abuse" contained therein was not properly brought to the trial court's attention.
 B The Sixth Amendment Question
The resolution of the hearsay question does not eliminate the issue of the defendant's right to confront and cross examine the witnesses against him. As the United States Supreme Court observed in California v. Green, 399 U.S. 149, 90 S.Ct. 1930,26 L.Ed.2d 489 (1970):
 "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at *Page 335 
common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception."
399 U.S. at 155-156, 90 S.Ct. at 1933-34.
Although the hearsay rules and the Confrontation Clause do not completely overlap, it is clear that a similar analysis applies to problems surrounding each. Some evidence qualifies as an exception to the hearsay rule because it is deemed sufficiently reliable to be admitted without the presence or opportunity for cross examination of the declarant. McCormickon Evidence, Section 262 at 628 (E. Cleary 2d ed. 1972). For example, "(t)he very essence of the admissibility of a business record is its probability of trustworthiness." Neal v. State,372 So.2d 1331, 1343 (Ala.Cr.App.), cert. denied,372 So.2d 1348 (Ala. 1979). Likewise, the rights of confrontation and cross examination are not absolute; some evidence which has "indicia of reliability" also meets the constitutional requirements of the Sixth Amendment even though the declarant is not present for cross examination. Dutton v. Evans,400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213, 227 (1970). See alsoCalifornia v. Green, supra.
Although the United States Supreme Court has not outlined a test to determine whether evidence admissible as an exception to the hearsay rule is also constitutionally permissible in light of the confrontation clause, many courts have engaged in a weighing process, considering some or all of the following criteria:
 "(W)hether the witness is unavailable and the prosecution has made good faith and reasonable efforts to procure the witness; whether the evidence has high standards of assurance of reliability or trustworthiness; . . . whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross examination of the witness would not cast any doubts on the admitted statements; . . . whether the defendant had been afforded prior opportunities for cross examination of the witness; whether the evidence is collateral or probative of an element of the crime; whether the evidence ties the defendant directly to the crime; and whether the practical considerations of convenience and speedy trials outweigh the inconvenience of producing the witness."
 State v. Olson, 75 Wis.2d 575, 589-91, 250 N.W.2d 12, 19-20 (1977) (footnotes omitted).
See also Henson v. State, 332 A.2d 773 (Del. 1975); Gregory v.State, 40 Md. App. 297, 391 A.2d 437 (1978); State v. Henderson,554 S.W.2d 117 (Tenn. 1977). See generally, Annot. 69 A.L.R.3d 22 (1976).
In spite of the fact that Alabama has not adopted any specific test, our decisions indicate that several factors have been considered by our appellate courts in determining whether documentary evidence introduced without the opportunity for cross examination of its maker satisfies the requirements of the confrontation clause. Such factors include (1) whether the evidence has a high probability of reliability, Neal v. State, 372 So.2d at 1343; (2) whether the evidence is "essentially documentary" or essentially testimonial, Griggs v. State,37 Ala. App. 605, 609, 73 So.2d 382 (1954), Woodward v. State,5 Ala. App. 202, 206, 59 So. 688 (1912); (3) whether the evidence is collateral, is used by the State only in rebuttal, or is probative of a material element of the offense, and if the last, whether the evidence is cumulative to that given by live witnesses, Seay, 390 So.2d at 14, McCrary v. State,398 So.2d 752, 755 (Ala.Cr.App.), cert. denied, 398 So.2d 757 (Ala. 1981), Wiley v. State, 389 So.2d 604, 608-09 (Ala.Cr.App. 1980), Lowery v. State, 55 Ala. App. 514 at 519-20,317 So.2d 365 (1975); (4) whether the evidence connects the defendant directly to the offense charged, Wiley v. State, 389 So.2d at 609; and (5) whether the defendant has an alternative to, or a prior opportunity for, cross examination, Seay, 390 So.2d at 14. These factors must be balanced against a defendant's *Page 336 
rights secured by the confrontation clause.
Applying these factors to the instant case we find, first, that the hospital record has a high degree of reliability. The enactment of Sections 12-21-5 though -7 indicates that hospital records are regarded as especially trustworthy in this State. Wigmore explains the special treatment accorded hospital records as follows:
 "The medical records of patients at a hospital . . . should be admissible. . . . There is a necessity; the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a circumstantial guarantee of trustworthiness . . . for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists."
 6 J. Wigmore, Evidence, Section 1707 at 51-52 (Chadbourn rev. 1979).
Second, the fact sought to be established by the medical report here — that the victim sustained vaginal trauma — was "essentially documentary". Griggs, supra; Woodward, supra. That is, cross examination of the physician would not have cast doubt upon the clinical observations or exposed the diagnosis to divergent views. State v. Olson, supra. The controverted fact in this case was not that the victim sustained an injury but that the defendant caused the injury.
While we acknowledge that a written diagnosis of "recent vaginal trauma" differs from other documentary evidence such as a vehicle certificate of title, McCrary, supra, a television sales registration, Neal, supra, or a tax stamp, Griggs, supra, the difference is one of degree, rather than kind. That is, even the diagnosis "recent vaginal trauma" stems from routine clinical observation of a patient and does not appear to be subject to variant opinions. There is no contention here that the physician's finding was erroneous or that other medical experts would have disagreed with the diagnosis. In sum, we do not believe that cross examination of the attending physician would have shaken the foundation for the hospital record evidence or would have undermined its reliability.
Third, while the victim's medical record was probative of a material element of the offense, it was not the "sole evidence" used to prove sexual contact, Lowery v. State,55 Ala. App. at 520, 317 So.2d 365, and it was cumulative to the testimony of the victim herself. Wiley, 389 So.2d at 609. See also McCrary, supra (certificate of title showing vehicle identification number cumulative to testimony of owner of stolen car).
Fourth, the hospital record did not in any way tie the defendant to the crime. Wiley, 389 So.2d at 609. The victim's account of her injuries had been deleted from the hospital report at the defendant's request and the record included no other link to the accused.
The final criterion weighed against the defendant's right to confront adverse witnesses is the single factor in his favor. There is no provision for taking the deposition of an in-state physician in a criminal case unless he is connected with a State mental hospital. Seay v. State, 390 So.2d at 14; Alabama Code Section 22-50-22 (1975). Compare Alabama Code Section12-21-260 (1975) (depositions in a criminal case) with Proposed Rule 17, A.R.Crim.P. *Page 337 
(Advisory Comm. Draft 1977) (deposition to preserve testimony).
Although the defendant was not entitled to any alternative method of questioning the physician who examined the victim, the defendant has not demonstrated that any harm resulted from this denial. In view of Wigmore's observations about modern hospital record-keeping practices, Wigmore, Evidence Section 1707, supra, it is likely that the examining physician "would be unable to recall any independent recollection of his particular entry other than it was in his handwriting and was true." Rupp v. Travelers Indemnity Co., 17 Wis.2d 16, 22,115 N.W.2d 612, 616 (1962).
Moreover, as we have pointed out, the fact that the victim suffered an injury is undisputed. At trial, the defendant made no showing of what he expected to elicit by cross examining the emergency room doctor. Balancing all five criteria against the defendant's right to confront and cross examine the witnesses against him, it is our judgment that the hospital record here had such "indicia of reliability" that, absent any stated ground for believing it to be subject to impeachment, it satisfied the confrontation clause.
 II
The defendant also contends that the trial court abused its discretion by not granting a continuance to secure the presence of the physician who examined the victim.
Once defense counsel learned from the assistant district attorney that the State did not intend to call the doctor to testify, he attempted to contact the physician and had a subpoena issued for him. When the subpoena was returned "not found" on the day before trial, counsel ascertained that the doctor was attending a medical convention in Mexico. The following day, the date set for trial, he moved for a continuance of the case, setting forth his attempts to secure the presence of the witness in an affidavit.
While we do not question the diligence of counsel's efforts to have the physician present to testify at trial, we do not believe that he carried the heavy burden of showing that the testimony of the witness was material, necessary and non-cumulative. See Weaver v. State, 401 So.2d 344 (Ala.Cr.App. 1981), and authorities cited therein. Thus, we cannot say that the defendant has shown the necessary and required "positive demonstration of abuse of judicial discretion." Beauregard v.State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied,372 So.2d 44 (Ala. 1979).
 III
On direct examination of one of the victim's schoolteachers, defense counsel inquired whether the witness knew the victim's reputation at school for truth and veracity. The witness responded, "Only when she is with me. Sometimes she tells the truth and sometimes she does not."
Then, on cross examination by the State, the following occurred:
 "Q. Ma'am, you said that sometimes you believe (the victim) and sometimes you don't. Is that from your experience being around (the victim)?
"A. That's true.
 "Q. Okay. Ma'am, would you believe her if she told you she was sexually molested by a man?
 "A. I would ask for further details on that. I would not like to speculate on that at all.
 "Q. Okay, ma'am, let's assume she told you she had been sexually assaulted by a man and it was further related to you that she had been to a doctor and this doctor had examined her and found she had trauma. She had injured her vagina.
 "MR. SHEEHAN (Defense Counsel): Your Honor, we would object. I believe this is a matter for the Jury's province and not for Cross Examination. It's the ultimate fact in this case.
 "THE COURT: I believe the door has been opened. What this witness would believe or would not believe about the victim. The door having been opened, *Page 338 
both parties may walk through with equal rights.
 "Q. Ma'am, would you believe that after an examination having been conducted of her and found that her vagina was injured?
"A. I would have to believe it."
If the ruling of the trial court is correct for any reason, it will not be reversed because the court assigned the wrong reason for its action. Lewis v. State, 399 So.2d 907
(Ala.Cr.App. 1981). Here, it is clear that defense counsel's question called for evidence of the victim's reputation, yet the witness answered with her personal opinion of the victim's truthfulness. The answer, however, does not call into play the doctrine of curative admissibility or "open the door" to other inadmissible evidence.
 "It often occurs that a party asks a perfectly proper question but his witness gives an irresponsive answer containing illegal or inadmissible matter. Such an occurrence does not authorize the opponent to rebut the answer under the auspices of the doctrine of curative admissibility." McElroy, Section 14.01.
The defendant's objection was properly overruled because the trial court has the discretion to allow a witness who has impeached another's credibility to be asked on cross examination whether he would believe the impeached witness if his testimony was corroborated by other evidence. McElroy, Section 140.01 (6). Thus, there was no error in asking whether the schoolteacher would believe the victim if the victim's complaint had been supported by a medical report.
Defense counsel also called a second teacher and questioned her about the reputation of the victim for truthfulness. As had the first teacher, this witness also gave a personal opinion of the child's veracity and was later asked on cross examination whether she would believe the victim if it were established that a "doctor examined her within a few hours (or within acouple of hours) and his diagnosis was that she suffered from recent vaginal trauma." (Emphasis added).
The defendant objected on the basis that the question had misstated the facts, apparently a reference to the above-emphasized portion of the question. Defendant contends that because the alleged sexual contact occurred near noon and the child was not examined by a physician until early evening, sometime between 5:45 P.M. and 7:45 P.M., the hypothetical question was not based on the facts in evidence.
In our judgment, "a few hours" or "a couple of hours" did not substantially misstate the facts underlying the hypothetical question. The jury had before it the victim's testimony regarding the time of the incident in question and also the hospital record stating the time the victim was examined by a physician. The trial court's ruling here did not "injuriously affect substantial rights" of the defendant. A.R.A.P. 45.
 IV
At the sentencing hearing, the State introduced certified copies of three documents purporting to be judgment entries of the defendant's three prior felony convictions. One of the documents, denominated "Sentence of Court" is not a judgment entry, see Summerhill v. State, 420 So.2d 804 (Ala.Cr.App. 1982), and does not affirmatively show that the defendant was represented by an attorney or waived this right. Therefore, it cannot be used to enhance punishment under the habitual offender act. Watson v. State, 392 So.2d 1274, 1279
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981).
The admission of this conviction was not harmless error. Merely because the defendant could have been sentenced to fifteen years regardless of whether he had two or three prior convictions does not mean that he would have been if the trial judge had not considered the third conviction. Thomas v. State,435 So.2d 1319 (Ala.Cr.App. 1981), reversed, 435 So.2d 1324
(Ala. 1982). Consequently, this cause must be remanded for proper sentencing.
AFFIRMED; *Page 339 
REMANDED FOR PROPER SENTENCING.
All Judges concur.
[1] In pertinent part, Alabama Code Section 12-21-5 states:
 "When the original would be admissible in any case or proceeding in a court in the state, a certified copy of the hospital records . . . when certified and affirmed by the custodian of said hospital records as provided in section 12-21-7, shall be admissible in evidence, without further proof in any court in the state where admissible, if and when
said hospital records were made and kept in the usual and regular course of business of said hospital and it was in the regular course of business of said hospital to make and keep said records and that said records were made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter." (emphasis added)
These requirements are virtually identical to those of the Business Records Act of Section 12-21-43 which in pertinent part states:
 "Any writing or record, . . . made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility."