RUSSELL, Judge.
After an ore tenus proceeding, the trial court ordered the permanent termination of the parental rights of Lisa Ann Cope and Ronald Eugene Cope, Jr. in their three-year-old child. Permanent legal custody of the child was vested in the Alabama Department of Human Resources.
Only the mother has appealed. We affirm.
*984 The dispositive issue on appeal is whether there is clear and convincing evidence that supports the trial court’s decision to terminate the mother’s parental rights.
The determination made by a trial court after ore terms proceedings is presumed correct, and such will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Haag v. Cherokee County Department of Pensions & Security, 489 So.2d 586 (Ala.Civ.App.1986).
Natural parents have a prima fa-cie constitutional right to the care and custody of their children. This right, however, will yield to a showing by clear and convincing evidence that permanent removal from the parent is in the best interests of the child. Kelley v. State Department of Human Resources, 515 So.2d 713 (Ala.Civ. App.1987). In determining the child’s best interests, the trial court must consider whether the parent is physically, financially, and mentally capable of caring for the child. Kelley, 515 So.2d 713. Once a trial court determines by clear and convincing evidence that the parents are unable or unwilling to fulfill their responsibilities to and for a child, then permanent termination of their rights is proper. Wallace v. Jefferson County Department of Pensions & Security, 501 So.2d 473 (Ala.Civ.App.1986).
The record reveals that the mother was admitted to a hospital for psychiatric treatment in May 1986. She was subsequently diagnosed as being schizophrenic, mildly retarded, and having auditory hallucinations (she “heard voices”). She stated that these voices were telling her to either hurt or kill herself. Although she was subsequently released, the record shows that she has been under regular outpatient care from a psychiatric therapist. It appears that in the summer of 1987 the mother attempted suicide by trying to stab herself in the abdomen. In response, the father began involuntary commitment proceedings, and the mother was committed until her discharge in January 1988. The mother’s hospital intake records reveal that she drank up to a case of beer per day, smoked marijuana when available, and that she was apt to “wander off” from her residence. While the mother was hospitalized, it appears that the father left town and abandoned her.
Upon the mother’s discharge in January 1988, she was placed on daily medication and was scheduled for both individualized and group therapy. Since this discharge, it appears that the mother herself requires adult supervision.
DHR first became involved with this family in August 1985 when the father came to DHR seeking assistance for himself and his pregnant wife. The father sought help in finding food and shelter.
The child was born in February 1986 and, after a couple of days in the hospital, was released with the parents. DHR provided assistance to the mother from the outset of the child’s birth. DHR assigned a parenting assistant three days a week to ensure that the child received adequate care and in an attempt to teach the mother such basic skills as bathing and feeding the child. The DHR social worker assigned to the case stated that, with the aid of the parenting assistant, the home environment was “marginally acceptable.” However, the social worker stated that within a few weeks she noted a decline in the general cleanliness of the home and specifically that the baby bottles were not being kept clean. She also noticed that the child was losing weight because the mother failed to keep up with and follow a feeding schedule. (The mother was apparently unable to tell time.)
When the child was approximately five weeks old, he was admitted to the hospital by an emergency room physician for dehydration, malnourishment, and “failure to thrive.” DHR immediately petitioned for and obtained temporary custody based upon the neglect by the parents.
The mother and father separated and the mother moved in with her aunt. DHR set up regular visits with the mother and child, and because of the aunt’s cooperation in trying to provide a suitable home for the mother, the “plan” was to reunite the mother and child. However, in July 1986 *985 the mother left her aunt’s home to live with another man. Thus, DHR lost contact with the mother, and the mother failed to visit with the child.
The testimony of two DHR social workers revealed no improvement in the mother’s own situation because she was constantly moving from place to place. As respects the child, the record indicates that he requires a great amount of attention because of his own apparent psychiatric problems.
Sections 26-18-7(a) and -7(b), Ala.Code (1975) (1986 Repl.Vol.), enumerate several grounds justifying the termination of parental rights, several of which are particularly applicable in the instant case. Subsection (a)(2) addresses the emotional or mental illness, or mental deficiency of the parent. Subsection (a)(6) relates to the reasonable efforts of DHR toward rehabilitating the parents.
As respects these grounds, the record shows that the mother has been diagnosed as schizophrenic, mildly retarded, and suffering from hallucinations. As a result, she has been committed for treatment at hospitals, both voluntarily and involuntarily. The mother was continuing treatment as an outpatient and was taking medication as late as January 1989. The record also shows that DHR has made reasonable efforts to assist the mother in raising the child initially and thereafter by attempting to reunite the mother and child. Further, the mother has failed to cooperate with DHR, by continuously moving about and, thus, being unable to establish a stable home environment.
Also, § 26 — 18—7(b) enumerates additional considerations, when the child is not in the physical custody of the parent, including subsection (b)(1), the failure of the parent to provide for the material needs of the child; subsection (b)(2), the failure of the parent to maintain regular visits with the child; subsection (b)(3), the failure of the parent to maintain consistent contact or communication with the child.
The record clearly shows that, since the child was placed in the temporary custody of DHR in March 1986, the mother has not made any attempt to provide for the material needs of the child. The mother, after leaving her aunt’s home in July 1986, has failed to maintain consistent contact with her child, and the record clearly indicates little, if any, attempt by the mother to adjust or correct her circumstances to provide for and meet the needs of the child.
As respects the availability of placing the child with relatives, the record reveals that the aunt’s home has also been under observation by DHR for allegations of abuse or neglect of the aunt’s own children. The home of the child’s maternal grandmother had also been under active investigation by DHR in Franklin, Morgan, and Lawrence counties. The maternal grandmother had ten children, two of whom have been previously placed for adoption by the State. While the mother’s sister was willing to take the child into her own home, the record reveals that the mother’s sister was herself a foster child and had been receiving food stamps. The mother’s sister has two young children of her own, was unaware of the extent of the mother’s psychiatric problems, and was apparently unaware of the child’s psychological problems and the consequent necessity for increased care and attention that the child would require. Thus, the trial court could properly conclude that placing the child with these relatives was not a viable alternative.
In addition to the stated dispositive issue, the mother argues that the introduction of her medical records without the ability to cross-examine those who made the records violates the confrontation clause of the sixth amendment.
We note that from the outset there was substantial doubt cast upon the mother’s ability to care for her child and, therefore, the trial court’s inspection of the medical records was warranted. Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App. 1984). We also note that our legislature has enacted § 12-21-5, Ala.Code (1975) (1986 Repl.Vol.), which specifically pertains to the admissibility of copies of hospital records under limited circumstances. The *986 enactment of this section of the code indicates the awareness that hospital records are regarded as especially trustworthy in this state. Pickett v. State, 456 So.2d 330 (Ala.Crim.App.1982). Furthermore, there was testimony from one of the DHR social workers which established the psychiatric problems of the mother, and thus, the admission of the mother’s medical records was merely cumulative, and any error was harmless. Rule 45, Alabama Rules of Appellate Procedure.
In view of the above, this case is due to be and is affirmed.
AFFIRMED.
INGRAM, P.J., and ROBERTSON, J., concur.