**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 22 2013, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ZEBULAN HILDEBRAND,            )
                              )
   Appellant-Defendant,        )
                              )
       vs.                    )   No. 69A01-1210-CR-459
                              )
STATE OF INDIANA,             )
                              )
   Appellee-Plaintiff.         )

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Jonathan Cleary, Special Judge
Cause No. 69C01-1109-FB-12

**May 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Zebulan Hildebrand appeals his conviction for aggravated battery as a Class B felony. Hildebrand presents three restated issues on appeal: 1) whether it was fundamental error for the trial court to allow certain expert testimony; 2) whether Hildebrand's sentence is inappropriate in light of his character and the nature of the offense; and 3) whether the judgment of conviction should be corrected to clarify his conviction. Concluding that there was no fundamental error in admission of the testimony, that Hildebrand's sentence is not inappropriate, and that the judgment of conviction should be amended for clarification, we affirm in part and remand for correction of the judgment of conviction.

## Facts and Procedural History

On August 12, 2011, Hildebrand brought his two-month-old son, S.H., into the emergency room. Hildebrand indicated that he had been watching S.H. along with his two older children, a one-year-old and a two-year-old, when the older children ran through the room, knocked Hildebrand off balance, and Hildebrand dropped S.H. Hildebrand stated that after being dropped, S.H. became limp and stopped breathing. Upon arrival at the emergency room, S.H. was having difficulty breathing, and was displaying abnormal limb movement. S.H. was rated as being a five on the Glasgow coma scale; anything under an eight is considered to be a coma. S.H. was then transported to a larger children's hospital in Cincinnati, which was better equipped to deal with his condition.

Upon arrival in Cincinnati, it was discovered that S.H. had subdural hematomas (bleeding on the brain) on both sides of the brain, and a lacerated (torn) liver. It appears

that at one point, Hildebrand told a hospital staff member that he had fallen on S.H. after being tripped by the older children, but later he was not able to tell physicians whether or not he had fallen on S.H. Hildebrand also could not recall whether he had given S.H. chest compressions. One of the physicians with whom Hildebrand spoke was Dr. Makoroff. Dr. Makoroff was concerned by the vagueness with which Hildebrand described the incident, and the inconsistencies between his story and S.H.'s injuries, and eventually she alerted police that she suspected child abuse. When Indiana State Police Detective Rohlfing spoke to Hildebrand, Hildebrand stated that he had shaken S.H. In his discussion with Detective Rohlfing, Hildebrand implied that the shaking had occurred when he tried to catch S.H. mid-fall and had jerked him back up, but then lost his grip again and S.H. fell to the floor.[1] That same day, tests revealed that S.H. exhibited retinal hemorrhages, and the pediatric ophthalmologist, Dr. West, diagnosed S.H. with abusive head trauma. In talking to Detective Rohlfing, Hildebrand admitted that he had not initially told doctors the whole story surrounding S.H.'s injuries, and admitted that his failure to tell the doctors the truth was an attempt to help himself.

On September 19, 2011, Hildebrand was charged with battery resulting in serious bodily injury, a Class B felony, and aggravated battery, a Class B felony. In August 2012, Hildebrand was tried before a jury. At trial, Dr. Makoroff testified that she diagnosed S.H. with child abuse or abusive head trauma; Dr. West testified that the trauma to S.H. was non-accidental. The jury found Hildebrand guilty of both counts.

---

[1] At some point, either at trial or before, Hildebrand indicated that he shook S.H. after he had fallen, in an attempt to revive him.

The court held a sentencing hearing in September 2012, and noted the following considerations as impacting sentencing:

> The victim, [S.H.], was two (2) months old.
> The Defendant does not have a criminal history.
> The Defendant told Indiana State Police Detective Tracy Rohlfing that you do not admit to doing this, wanted to hide the fact that he almost killed [S.H.], he jerked the shit out of [S.H.] two to three times, and he thought he broke [S.H.]'s neck.
> The Defendant was in a position of trust, as he is the father of [S.H.], and was the sole caretaker in the home at the time the two month old was injured.

Brief of Appellant at 32. The court also noted other considerations, including the multiple injuries that S.H. was found to have sustained. The court sentenced Hildebrand to sixteen years at the Department of Correction with two years suspended to probation. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Fundamental Error

### A. Standard of Review

We will review errors not preserved at trial only if they rise to the level of fundamental error. Townsend v. State, 632 N.E.2d 727, 730 (Ind. 1994). The burden of proving that an alleged error occurred and that it constitutes fundamental error rests with the defendant. Id. The fundamental error rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Wilson v. State, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), trans. denied. Fundamental error is defined as error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. Id. The mere fact that error occurred and that it was prejudicial

4

will not satisfy the fundamental error rule. Id. In determining whether an alleged error denied the defendant a fair trial, we must consider whether the resulting harm or potential for harm is substantial. Townsend, 632 N.E.2d at 730. We look to the totality of the circumstances and decide whether the error had substantial influence upon the verdict to determine if the trial was unfair. Id.

## B. Admission of Physician Testimony

Hildebrand first challenges the testimony of Drs. Makoroff and West, claiming that the testimony was too speculative because the doctors did not have all of the facts—namely Hildebrand's later admission that he shook S.H.—when they made their diagnoses. Further, Hildebrand argues that the testimonies regarding S.H.'s injuries being the result of child abuse or non-accidental trauma were in violation of Indiana Evidence Rule 704 in that they went to the issue of intent. Because Hildebrand moved in limine to prevent the testimony but did not object at the time of the testimony, any error was not preserved for appeal. Raess v. Doescher, 883 N.E.2d 790, 796-97 (Ind. 2008). We thus analyze the challenged testimonies under the fundamental error doctrine.

Regarding the nature of the doctors' conclusions, we disagree that the testimony was too speculative. While Dr. Makoroff formed an initial opinion about the nature of S.H.'s injuries, her diagnosis of child abuse did not solidify until Dr. West examined S.H. and discovered retinal hemorrhaging. That was the same day that Detective Rohlfing first spoke with Hildebrand and Hildebrand admitted to shaking S.H. It appears that that additional background information did not change either doctor's opinion as to the nature of the injuries, either that day or at any time up to and including when they gave their testimony at trial.

Moreover, a review of the record shows that Dr. Makoroff is a child abuse specialist, and her transcript testimony was over one hundred and fifty pages. At trial, she discussed her extensive background and experience, as well as her exam of S.H.'s medical records and CT scans, examination of S.H. himself, and conversation with S.H.'s parents. She specifically noted that she felt her job was not only to make sure that no incidents of child abuse were missed, but also that child abuse was not mistakenly diagnosed. She testified as to other possible causes for each of S.H.'s injuries, and then explained how those possible causes had been ruled out or were not consistent with Hildebrand's account of the accident or with the totality of the combination of S.H.'s particular injuries. She went through each test and finding and explained how it contributed to her analysis and how she reached her ultimate diagnosis. In sum, we are convinced that her diagnosis was far from speculative.

Dr. West's testimony was shorter and more specific because she was the ophthalmologist who examined S.H.'s eyes and discovered the retinal hemorrhages, and her testimony focused on her findings. Nonetheless, she also discussed other possible causes for the type and severity of S.H.'s hemorrhages, and then explained how those other causes—for example, diabetes, CPR, or a fall as Hildebrand described it—had been ruled out or were inconsistent, and she was left with abusive head trauma as the only possibility within a medical certainty. She was specifically asked whether the hemorrhages could have been caused by a shaking to revive S.H., and she testified that they could not. Her testimony was also not too speculative.

Hildebrand also contends that the doctors' testimony violated Indiana Evidence Rule 704, arguing that the opinion that S.H.'s injuries were caused by child abuse rather

than accidental injury went to intent and/or the ultimate issue. Indiana Evidence Rule 704 states:

> (a) Testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.
> (b) Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

Hildebrand cites no Indiana authority to support his argument, but cites to two cases from other jurisdictions, Wyatt v. State, 405 So.2d 154 (Ala. Crim. App. 1981), and State v. Sanchez-Alfonso, 293 P.3d 1011 (Or. 2012). However, in Wyatt, the court disapproved of a doctor testifying that the child was a victim of child abuse because the facts and medical findings were simple enough to be understood by a jury, and therefore the ultimate determination of abuse was their conclusion to draw. 405 So.2d at 158. And in Sanchez-Alfonso, the problem with the doctor's testimony was not that it went to whether the child had been abused, but that the doctor testified that the defendant was the abuser. 293 P.3d at 1017.

The State notes that Rule 704 specifically allows that testimony is not objectionable merely because it goes to an ultimate issue. The State also cites to a case more generally on point, Julian v. State, 811 N.E.2d 392 (Ind. Ct. App. 2004), trans. denied, in which we determined that expert testimony was not in violation of Rule 704. In that case, an arson case, an expert testified that the fire in question had been intentionally set. We determined that because the expert did not testify that the defendant had intentionally set the fire, the testimony was not in violation of Rule 704. Julian, 811 N.E.2d at 400. Likewise, here the doctors testified as to their diagnosis of child abuse,

7

but neither doctor testified that <u>Hildebrand</u> had intentionally injured S.H. It is true that Hildebrand admitted to being the only caretaker for S.H. that day. However, we agree with the State that the fact that the doctors' testimonies, if believed, and when combined with other evidence, might have led the jury to conclude that Hildebrand intentionally injured S.H., does not mean that the testimony was in violation of Rule 704. We conclude that the doctors' testimonies did not violate Rule 704.

Because the doctors' testimony as a whole was broad and thorough and took into account S.H.'s multiple injuries and the backstory provided by Hildebrand, we conclude that the testimony was not too speculative. Further, the testimony was not in violation of Indiana Evidence Rule 704. We conclude that there was no fundamental error in allowing Drs. Makoroff and West to testify to their diagnoses of child abuse and non-accidental trauma.

## II. Appropriateness of Sentence

### A. Standard of Review

We are empowered by Indiana Appellate Rule 7(B) to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence has met this inappropriateness standard of review. <u>Childress v. State</u>, 848 N.E.2d 1073, 1080 (Ind. 2006). When conducting this inquiry, we may look to any factors appearing in the record. <u>Roney v. State</u>, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), <u>trans. denied</u>.

### B. Hildebrand's Aggravated Battery Sentence

Next, Hildebrand challenges his sentence, arguing that it is inappropriate in light of his character and the nature of the offense. We disagree. Hildebrand was convicted of aggravated battery as a Class B felony, and the statutory sentencing range was thus between six and twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Hildebrand was sentenced to sixteen years, with two years suspended to probation.

Hildebrand argues that the nature of the offense was not egregious enough to warrant his sentence, because S.H.'s injuries were "typical" of what one would expect of a Class B felony. Br. of Appellant at 23. Under this reasoning, rarely would any offense warrant an enhanced sentence. Moreover, Hildebrand downplays the continuing and potential life-long repercussions of S.H.'s injuries, as it appears that while S.H. has improved since being released from this hospital, he continues to be delayed in reaching developmental milestones.

Hildebrand also argues that his character suggests that a reduced sentence would be more appropriate. Hildebrand notes his remorse for S.H.'s injuries, his supportive family, and his lack of criminal history. He fails, however, to address his admission to Detective Rohlfing that he initially lied to doctors about the accident in an effort to protect himself. He also fails to address what we believe to be an important factor—that the victim was his own two-month-old son. Abuse of that position of trust speaks to his character, and perhaps says more than any later regret can. In light of the totality of the nature of the offense and Hildebrand's character, we conclude that the sentence imposed by the trial court was not inappropriate.

### III. Abstract of Judgment

Finally, Hildebrand claims that the trial court orders are not clear as to whether he was convicted of both charged counts, and that if both convictions stand, double jeopardy is implicated. The trial court's judgment of conviction and sentencing order notes that Hildebrand was "convicted by a jury . . . of Count I . . . and Count II . . ." but that the court

> now enters judgment of conviction for Count II: Aggravated Battery, a Class B felony and does not enter a conviction or sentence on Count I: Battery Resulting in Serious Bodily Injury, a Class B felony, because said convictions are based upon the same essential material facts and convictions and sentencing on both would violate double jeopardy.

Br. of Appellant at 31. The abstract of judgment notes Hildebrand's sentence for Count II but does not address Count I. The State does not object to remanding this case with instructions to clarify that judgment of conviction was entered only for Count II of the information. We agree with Hildebrand that a conviction can have ramifications even if a defendant is not sentenced for it, and we remand to the trial court to correct the abstract of judgment to indicate that judgment of conviction was not entered for Count I, battery resulting in serious bodily injury.

### Conclusion

Concluding that the expert testimony was not overly speculative and did not violate Indiana Evidence Rule 704, that Hildebrand's sentence is not inappropriate in light of his character and the nature of the offense, and that the abstract of judgment should be clarified, we affirm in part and remand to amend the abstract of judgment consistent with this opinion.

Affirmed in part and remanded.

FRIEDLANDER, J., and CRONE, J., concur.